## Lorillard and others *v.* Pride.[1]

*(Circuit Court, N. D. Illinois.   July 26, 1886.)*

1. Trade-Marks—Material not Subject to Appropriation.
    There can be no valid trade-mark in a piece of tin used as a tag for tobacco, regardless of its color, shape, or inscriptions upon it, as tin is one of the common metals in use by the public for a very large variety of purposes, and it would be as reasonable to assume that paper, wood, leather, or cloth could be exclusively appropriated as a badge or *indicia* for goods as to assume that tin could be so appropriated.

2. Same—Popular Designation.
    No one, by using a particular material—as tin, paper, wood, or leather—as a label or tag for goods, can acquire an exclusive right in a popular designation applied by the public to such goods; as "Tin Tag," "Paper Tag," etc.

[1] Edited by Charles C. Linthicum, Esq., of the Chicago bar.

3. SAME—ARBITRARY TERMS.

Arbitrary terms, such as "Tin Tag" or "Wood Tag," branded upon or given to goods by the manufacturer or seller, to distinguish them, may constitute valid trade-marks, but the person so using them would have no right to the exclusive use of tin or wood as a material to designate the goods.

4. SAME—WORDS—FIGURES—EMBLEMS—MATERIAL.

A person may appropriate any word, figure, or emblem as a trade-mark, but not the exclusive right to the use of the well-known material substances upon which the word, figure, or emblem may be impressed or engraved.

5. SAME—PATENTED MONOPOLY CANNOT BE EXTENDED UNDER GUISE OF TRADE-MARK.

Where a patent is declared void the owner cannot perpetuate the monopoly by falling back upon a popular name given the goods by the public in consequence of the use of the patent, and claiming such name as a trade-mark.

In Equity.

*Banning & Banning, Tillotson & Kent,* and *Rowland Cox,* for complainant.

*H. S. Oakley, S. A. & R. H. Duncan,* and *Benj. F. Thurston,* for defendant.

BLODGETT, J. The bill in this case avers that complainants are the most extensive manufacturers of tobacco in the United States; that they have been engaged in said business for many years; that their goods are sold throughout the United States, and in foreign countries; that during the year 1874 they adopted as a trade-mark for their plug tobacco a tag or piece of tin, and called their tobacco "Tin Tag Tobacco," and that they have been successful in establishing the tin tag as a badge of identification or mark for their goods, and the term "Tin Tag Tobacco" as a designation by which their goods bearing that mark are bought and sold; that the adoption of the tin tag as a trade-mark for their goods was original with them; that prior to such adoption it had never been used as a mark for plug tobacco; that they have now, and have had since the year 1874, the right to its exclusive use as a trade-mark for their plug tobacco; that the same is now, and has been since 1874, known to the public as their trade-mark, and whenever and wherever a piece of tin is seen affixed to a plug of tobacco it means the tobacco of complainants; that the use of their said trade-mark, to wit, a piece or tag of tin, has been continuous from the date of its adoption as aforesaid. Complainants aver that they have the exclusive right to employ a tin tag, whatever its appearance, color, or shape, and state that they bring this bill for the purpose of establishing and maintaining their exclusive right to the use of the piece of tin of any shape as a trade-mark for plug tobacco, and to prevent the use upon plug tobacco not made by them of pieces of tin which would cause said tobacco to be sold in the market as "Tin Tag Tobacco" or "Tin Tag Plug." The bill further charges that the defendant, in fraud of complainants' rights, has, since the adoption of complainants' said trade-mark, sold large numbers of plugs or pieces of chewing tobacco not made by complainants, to which have been affixed pieces of tin of various shapes,—

such as star-shaped, or circular and rectangular, pieces of tin; and that by so placing on the market and selling plug tobacco, with pieces of tin affixed thereto, defendant has fraudulently violated and infringed upon complainants' trade-mark, intending by so marking such plug tobacco with a piece of tin to make the public believe that the tobacco so sold by him was the manufacture of complainants. The bill prays an accounting by the defendant of the profits made by him upon the sale of tobacco marked with pieces of tin or tin tags, and that the defendant be forever enjoined and restrained from in any manner using tin tags in connection with the sale of plug tobacco, or anything that would cause any plug tobacco not made by complainants to be sold as and for "Tin Tag Tobacco."

The answer of defendant, in substance, admits that complainants, in 1874, and from that time to the commencement of the suit, had practiced the marking of their plug tobacco by tin tags affixed in some manner to a plug of tobacco; but avers that said tags carried also letters or marks impressed or embossed upon the same,—such as "Lorillard," "P. Lorillard & Co.," "Climax," "Bullion," etc.; and that it is by means of these names that complainants' tobbacco is known and sold in the market, and not by the exclusive and single designation of "Tin Tag Tobacco;" and that the piece of tin alone does not constitute complainants' trade-mark, or designate their goods. The answer further denies that complainants have or ever had the exclusive right to the use of a piece of tin, irrespective of its appearance, color, or shape, as a trade-mark, or badge of identification, upon their tobacco; and charges that, long prior to the adoption by complainants of their tin tags, Newdecker Bros., of Richmond, Virginia, had adopted a piece of tin carrying the words "Patent Process," as a mark to distinguish it as a peculiar kind of plug tobacco manufactured by them. Defendant further charges that the tobacco sold by him was manufactured by the firm of Liggett & Myers, of St. Louis, Mo., and bore upon its tin tags evidence that it was so manufactured by Liggett & Myers, and that it in no way deceived, or tended to deceive, the public as to the origin or manufacture of said tobacco; but that, on the contrary, the purchasers and the public well knew that said firm was in the habit of stamping or marking their tobacco with tin tags of peculiar shape, indicating that they were the manufacturers thereof.

It appears from the pleadings and proof that, some time in the year 1874, Mr. Charles Seidler, one of the complainants' firm, invented a mode of marking or distinguishing plug tobacco by imbedding into the surface of the plug a metal tag or label, and that he obtained a patent for said process on or about January 12, 1875; that this patent became the exclusive property of the complainants, and for several years the complainants insisted upon the validity of this patent, and asserted their exclusive right by virtue of this patent to mark their tobacco with tin tags, and thereby indicate its origin;

and that the use of the tin tag, and the designation of complainants' goods by the word "Tin Tag," originated from the attempt of complainants to enforce their exclusive right to the use of a metal tag under this patent, and not to the adoption of tin, or the words "Tin Tag," as a trade-mark.

It further appears that in June, 1876, complainants registered in the office of the commissioner of patents a trade-mark, consisting of a bright, metallic tag, preferably of a circular form, firmly affixed to one of the sides or faces of plugs of tobacco; and that in September, 1876, the firm of Liggett & Myers, of St. Louis, whose tobacco is sold by the defendant, also registered in the patent-office of the United States a trade-mark for plug tobacco, consisting of a bright metallic tag or label of circular outline, having a lustrous or metallic appearance, and provided at its centre with a circular aperture; and that they also, at the same time, registered, as a trade-mark for plug tobacco, a bright, metallic tag or label, in the form of a five-point star, with a circular aperture at its center; that said Liggett & Myers, also, in November, 1876, registered in the patent-office, as a trade-mark for plug tobacco, a bright metallic tag, with rectangular outline, and a rectangular opening at its center; and also that in December, 1876, complainants registered, as trade-marks for plug tobacco, the fanciful or arbitrary words "Tin Tag Plug," and also the words "Tin Tag Tobacco." It also appears that, from the time complainants began to mark their tobacco plugs with tin tags under and in pursuance of the Seidler patent, various other manufacturers, including Liggett & Myers, commenced the marking or labeling of their plug tobacco with tin tags of various forms; and that there is now, and has been for many years, upon the market brands of tobacco made by different manufacturers, marked or indicated by tin tags of very many different forms and colors, each of these colors or forms usually indicating the name of the manufacturer.

It will thus be seen that complainants' claim to the exclusive right of using tin as a mark or *indicia* of their goods had not been acquiesced in by the public, but that other manufacturers have used tin in some form for the purpose of indicating tobacco of their manufacture.

The bill asserts, broadly, the complainants' exclusive right to employ a tin tag, whatever its appearance, color, or shape, as a trade-mark for their tobacco, and insists that no other person has a right to use tin for the purpose of marking their tobacco; and the case has been argued by complainants' counsel, and the proofs taken, solely for the purpose of asserting before the court this right so put forward in the bill.

I think there can be no doubt, from the proof, that the complainants were the first to attempt the use of tin as a special mark to indicate and designate their manufactured goods, and I think there can be no doubt that from the time they began to mark their

goods with tin tags, in pursuance of the Seidler patent, their goods began to be known, and finally became to be widely known, as "Tin Tag Tobacco;" and did the case turn upon the right of the complainants to the use of the arbitrary words "Tin Tag" or "Tin Tag Tobacco," as required in some of their registered trade-marks, there would be but little difficulty, perhaps, in the case, because the popular designation which their tobacco obtained by reason of its bearing a tin tag upon it in pursuance of the patent was this short and expressive description, "Tin Tag." But the claim of this bill is that no person other than complainants has a right to use upon plug tobacco a piece of tin, of any shape or color, or with any legend or mark or sign upon it, as a manufacturer's or dealer's mark, or designation of the origin of the goods.

Tin is one of the common metals in use by the public for a very large variety of purposes. It is easily stamped or impressed with letters, figures, or characters, or cut into various shapes, and takes readily different colors or shades besides its natural metallic lustre; and, like paper, becomes the vehicle or material for receiving whatever impression or color may be stamped upon it. It seems to me it would be as reasonable to assume that the complainants could have adopted paper or wood, or a piece of cloth or leather, as a badge or *indicia* of their goods, as that they could have taken a piece of tin. That they had a right to appropriate to their exclusive use a piece of tin, without regard to its color, shape, or the characters or letters it bears, does not seem to me to be within the scope and purpose of the law of trade-marks.

It also appears that complainants' first effort was to secure to themselves the exclusive right to the use of tin as a badge of their goods by means of the Seidler patent, and that their goods acquired the name of "Tin Tag" goods while they were acting under their patent, and that it was not until after their patent had been held void that they fell back upon their right to use tin as a trade-mark. Having adopted this use of tin, and given to their goods the name of "Tin Tag Tobacco," while they were claiming the rights given them by the patent, it seems to me they have no right now to perpetuate a monopoly which the courts decided they could not have, by falling back upon the popular name given their goods marked in pursuance of the patent. If their goods properly became known and designated in the market as "Tin Tag" goods, by virtue of their marking them or tagging them in pursuance of their patent, the right to so indicate or mark the goods became public when the patent expired, or was declared void, and they cannot perpetuate or continue this right by claiming it as a trade-mark. I have no doubt, from the proof in this case, that the designation of plug tobacco as "Tin Tag" or "Tin Tag Tobacco" was first applied to tobacco manufactured by complainants, but complainants did not brand or mark their goods with the words "Tin Tag," but the term or name of "Tin Tag" was popularly applied

to the goods by dealers and buyers by reason of the tin tag put upon them under the claims of the patent. If complainants had, from the outset, marked their goods with this fanciful or arbitrary designation of "Tin Tag Plug" or "Tin Tag Tobacco," as a trade-mark, their exclusive right to its use might be sustained; but complainants did not brand or mark these words upon their goods. The public gave the name of "Tin Tag" to the goods because the plugs had tin tags affixed to them.

It also appears from the proofs that the firm of Liggett & Myers, whose agent defendant is, have never marked their goods with the words "Tin Tag." Liggett & Myers, and other manufacturers, have also, from the time complainants' goods first began to be known to the trade by the name "Tin Tag," denied and resisted complainants' exclusive right to the use of a piece of tin, without regard to its color, shape, or devices, as a trade-mark; and have persistently marked their own goods with pieces of tin of various shapes, colors, and letterings; and naturally enough all goods so marked with tin labels or tags are designated in the trade by the term "Tin Tag" goods. I think it may be taken as established by the proof that the words "Tin Tag" do not now designate complainants' goods, or goods manufactured by the complainants upon the market or to the trade, and that plug tobacco made by other manufacturers is now designated and sold by the name of "Tin Tag" tobacco, although not labeled or branded with such name, because they bear a tin label or tag of some form. But if the public has been imposed upon, or the goods of others have been sold as the goods of complainants, to the damage of complainants, it is because complainants were unfortunate in the selection of a designation for their goods, and made their claim to the use of tin as their trade-mark more broadly than the law will permit; and if goods of other manufacturers are now known and sold by the name of "Tin Tag," it is not because they are so branded, named, or designated, but as a short and popular mode of describing all goods marked with tin tags. If other dealers have the right to use tin as a material from which to make a tag or label, they cannot be held to violate complainants' rights, because the public designate all goods marked with a tin label as "Tin Tag" goods. If complainants had put upon the market goods marked with paper, wood, or leather tags, and such goods had come to be popularly known and designated in the trade as "Paper Tag," "Wood Tag," or "Leather Tag," complainants could not by such use acquire the right to prevent all other persons from putting a paper, wooden, or leather tag upon similar goods, because the use of such materials is a right common to all, and cannot be exclusively appropriated by any one.

The use of arbitrary terms such as "Tin Tag" or "Wood Tag" by a manufacturer, to indicate goods produced or sold by him, might be allowable if the person so using the name or words branded them upon his goods, or in any way gave the goods the name, but that

would give no right to the exclusive use of the tin or wood as a material to designate the goods. A person may appropriate any word, figure, or emblem as a trade-mark, but that does not give an exclusive right to the use of the well-known material substances upon which the word, figure, or emblem may be impressed or engraved. I am therefore of opinion that this bill should be dismissed for want of equity; but this disposition of the case is made without prejudice to the complainants' right to sue upon any of its specific trade-marks depending on the coloring, design, shape, or letterings on the tin label.