In the

# United States Court of Appeals

### For the Seventh Circuit

No. 09-2155

JAY FRANCO & SONS, INC.,

*Plaintiff-Appellee*,

*v.*

CLEMENS FRANEK,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 08 C 58—**Robert M. Dow, Jr.**, *Judge*.

ARGUED MAY 24, 2010—DECIDED AUGUST 11, 2010

Before EASTERBROOK, *Chief Judge*, and POSNER and
EVANS, *Circuit Judges*.

EASTERBROOK, *Chief Judge*. The same year Huey Lewis
and the News informed America that it's "Hip To Be
Square", Clemens Franek sought to trademark the cir-
cular beach towel. His company, CLM Design, Inc.,
pitched the towel as a fashion statement—"the most
radical beach fashion item since the bikini," declared one
advertisement. "Bound to be round! Don't be square!"

proclaimed another. CLM also targeted lazy sunbathers: "The round shape eliminates the need to constantly get up and move your towel as the sun moves across the sky. Instead merely reposition yourself."

The product enjoyed some initial success. Buoyed by an investment and promotional help from the actor Woody Harrelson (then a bartender on the TV show *Cheers*), CLM had sold more than 30,000 round beach towels in 32 states by the end of 1987. To secure its status as the premier circular-towel maker, the company in 1986 applied for a trademark on the towel's round design. The Patent and Trademark Office registered the "configuration of a round beach towel" as trademark No. 1,502,261 in 1988. But this was not enough to save CLM: Six years later it dissolved. The mark was assigned to Franek, who continues to sell circular towels.

In 2006 Franek discovered that Jay Franco & Sons, a distributor of bath, bedding, and beach accessories, was selling round beach towels. After settlement negotiations failed, Franek sued two of Jay Franco's customers, Target and Walmart, for unauthorized use of his registered trademark in violation of §32 of the Lanham Act, 15 U.S.C. §1114. Jay Franco had agreed to indemnify and defend its customers in such suits, so it sued Franek to invalidate his mark. (The pending suits against Target and Walmart made the claim ripe, just as insurers can bring declaratory-judgment suits to resolve disputes about a policy's scope once an insured has been sued and asserts that the policy applies.) The district judge consolidated the two cases, granted summary judgment

in Jay Franco's favor, and dismissed the remaining claims and counterclaims. 2009 U.S. Dist. LEXIS 20361 (N.D. Ill. Mar. 13, 2009). Franek appeals from that judgment; Target and Walmart are not part of the appeal.

One way to void a trademark is to challenge its distinctiveness. A valid trademark identifies the source of the good it marks. Designs do not inherently communicate that information, so to be valid a product-design mark must have acquired a "secondary meaning"—a link in the minds of consumers between the marked item and its source. See *Wal-Mart Stores, Inc. v. Samara Brothers, Inc.*, 529 U.S. 205 (2000); *Bretford Manufacturing, Inc. v. Smith System Manufacturing Corp.*, 419 F.3d 576, 578–80 (7th Cir. 2005). Cf. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763 (1992). But this type of invalidation is unavailable to Jay Franco. Franek (and before him CLM) has continuously used the round-towel mark since its 1988 registration. That makes the mark "incontestable," 15 U.S.C. §1065, a status that eliminates the need for a mark's owner in an infringement suit to show that his mark is distinctive. See 15 U.S.C. §1115(b); *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189 (1985).

Unfortunately for Franek, incontestable marks are not invincible. The Lanham Act lists a number of affirmative defenses an alleged infringer can parry with; one is a showing that the mark is "functional." See §1115(b)(8); *Specialized Seating, Inc. v. Greenwich Industries, L.P.*, No. 07-1435 (7th Cir. Aug. 11, 2010), slip op. 3–4 (discussing functionality and other ways to defeat incontestable marks). As our companion opinion in *Specialized Seating*

explains, patent law alone protects useful designs from mimicry; the functionality doctrine polices the division of responsibilities between patent and trademark law by invalidating marks on useful designs. This was the route Jay Franco pursued. The district judge agreed, finding Franek's mark "functional" under the definition the Supreme Court gave that concept in *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 32–35 (2001). The judge got it right.

*TrafFix* says that a design is functional when it is "essential to the use or purpose of the device or when it affects the cost or quality of the device," 532 U.S. at 33, a definition cribbed from *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 850 n.10 (1982). So if a design enables a product to operate, or improves on a substitute design in some way (such as by making the product cheaper, faster, lighter, or stronger), then the design cannot be trademarked; it is functional because consumers would pay to have it rather than be indifferent toward or pay to avoid it. A qualification is that any pleasure a customer derives from the design's identification of the product's source—the joy of buying a marked good over an identical generic version because the consumer prefers the status conferred by the mark—doesn't count. That broad a theory of functionality would penalize companies for developing brands with cachet to distinguish themselves from competitors, which is the very purpose of trademark law. In short, a design that produces a benefit other than source identification is functional.

Figuring out which designs meet this criterion can be tricky. Utility patents serve as excellent cheat sheets because any design claimed in a patent is supposed to be useful. See 35 U.S.C. §101; *Brenner v. Manson*, 383 U.S. 519, 528–36 (1966). For this reason, *TrafFix* held that expired utility patents provide "strong evidence that the features therein claimed are functional." 532 U.S. at 29. The parties in this case wrangle over the relevance of a handful of utility patents that claim circular towels. We need discuss only one (No. 4,794,029), which describes a round beach towel laced with drawstrings that can be pulled to turn the towel into a satchel. This patent's first two claims are:

> 1. A towel-bag construction comprising: a non-rectangular towel;
>
>> a casing formed at the perimeter of said towel;
>>
>> a cord threaded through said casing; and
>>
>> a section of relatively non-stretchable fabric of a shape geometrically similar to that of said towel attached with its edges equidistant from the edges of said towel.
>
> 2. A towel-bag construction as set forth in claim 1 wherein said towel is circular in shape, whereby a user while sunbathing may reposition his or her body towards the changing angle of the sun while the towel remains stationary.

Claim 2 sounds like Franek's advertisements, which we quoted above. The patent's specification also reiterates, in both the summary and the detailed description, that

a circular towel is central to the invention because of its benefit to lazy sunbathers.

Franek argues that claim 2 does not trigger the *TrafFix* presumption of functionality because his towel does not infringe the '029 patent. He notes that claim 2 incorporates claim 1 (in patent parlance, claim 1 is "independent" and claim 2 "dependent," see 35 U.S.C. §112) with the added condition that the towel be circular. An item can infringe a dependent claim only if it also violates the independent claim incorporated by the dependent claim. See *Monsanto Co. v. Syngenta Seeds, Inc.*, 503 F.3d 1352, 1359 (Fed. Cir. 2007). Franek reasons that because his towel lacks a perimeter casing, drawstring, and nonstretchable section of fabric, it does not infringe claim 1, and thus cannot infringe claim 2. Even if his towel could infringe claim 2, Franek maintains that the claim is invalid because the towel-to-bag patent was sought in 1987, two years after Franek started selling a round beach towel, and thus too late to claim its invention. See 35 U.S.C. §102(b); *Pfaff v. Wells Electronics, Inc.*, 525 U.S. 55 (1998).

Proving patent infringement can be *sufficient* to show that a trademarked design is useful, as it means that the infringing design is quite similar to a useful invention. See *Raytheon Co. v. Roper Corp.*, 724 F.2d 951, 959 (Fed. Cir. 1983). But such proof is unnecessary. Functionality is determined by a feature's usefulness, not its patentability or its infringement of a patent. *TrafFix*'s ruling that an expired patent (which by definition can no longer be infringed) may evince a design's functionality demon-

strates that proof of infringement is unnecessary. If an invention is too useless to be patentable, or too dissimilar to a design to shed light on its functions, then the lack of proof of patent infringement is meaningful. Otherwise it is irrelevant. A design may not infringe a patented invention because the invention is obvious or taught by prior art, see 35 U.S.C. §§ 102(a), 103(a), but those and other disqualifiers do not mean that the design is not useful. Just so here: Franek's towel may lack some of the components in claim 1 necessary to infringe claim 2, but claim 2's coverage of a circular beach towel for sunbathing is enough to signal that a round-towel design is useful for sunbathers. Each claim in a patent is evaluated individually, see *Altoona Publix Theatres, Inc. v. American Tri-Ergon Corp.*, 294 U.S. 477, 487 (1935), each must be substantially different, see 37 C.F.R. §1.75(b); Manual of Patent Examining Procedure §2173.05(n)(b) (8th ed., July 2010 rev.), and each is presumed valid, 35 U.S.C. §282. We must therefore presume that the unique component in claim 2—the round shape of the towel—is useful.

Nor does it matter that the '029 patent application was filed two years after Franek began selling round towels. As we've explained, a patent's invalidity for a reason other than uselessness says nothing about the claimed design's functionality. And a design patented yesterday can be as good evidence of a mark's functionality as a design patented 50 years ago. Indeed, more recent patents are often *better* evidence because technological change can render designs that were functional years ago no longer so. See *Eco Manufacturing LLC v. Honeywell*

*International Inc.*, 357 F.3d 649, 653 (7th Cir. 2003). The Court in *TrafFix* may have dealt only with *expired* utility patents, but the logic it employed is not limited to them.

To put things another way, a trademark holder cannot block innovation by appropriating designs that undergird further improvements. Patent holders can do this, but a patent's life is short; trademarks can last forever, so granting trademark holders this power could permanently stifle product development. If we found Franek's trademark nonfunctional, then inventors seeking to build an improved round beach towel would be out of luck. They'd have to license Franek's mark or quell their inventiveness. That result does not jibe with the purposes of patent or trademark law.

This "strong evidence" of the round towel's functionality is bolstered by Franek's own advertisements, which highlight two functional aspects of the round beach towel's design. One, also discussed in the '029 patent, is that roundness enables heliotropic sunbathers—tanners who swivel their bodies in unison with the sun's apparent motion in order to maintain an even tan—to remain on their towels as they rotate rather than exert the energy to stand up and reposition their towels every so often, as conventional rectangular towels require.

Franek responds that whatever its shape (golden-ratio rectangle, square, nonagon) any towel can satisfy a heliotropic tanner if it has enough surface area—the issue is size, not shape. That's true, and it is enough to keep the roundness of his towel from being functional

under the first prong of *TrafFix*'s definition ("essential to the use or purpose of the device") but not the second. For heliotropic sunbathers, a circle surpasses other shapes because it provides the most rotational space without waste. Any non-circle polygon will either limit full rotations (spinning on a normal beach towel leads to sandy hair and feet) or not use all the surface area (a 6′ tall person swiveling on a 6′ by 6′ square towel won't touch the corners). Compared to other shapes that permit full rotations, the round towel requires less material, which makes it easier to fold and carry. That's evidence that the towel's circularity "affects the . . . quality of the device." (The reduction in needed material also suggests that round towels are cheaper to produce than other-shaped towels, though Franek contends that cutting and hemming expenses make them costlier. We express no view on the matter.)

But let us suppose with Franek—who opposed summary judgment and who is thus entitled to all reasonable inferences—that round towels are not measurably better for spinning with the sun. After all, other shapes (squircles, regular icosagons) are similar enough to circles that any qualitative difference may be lost on tanners. Plus, the ability to rotate 180 degrees may be an undesired luxury. Few lie out from dawn 'til dusk (if only to avoid skin cancer) and the daily change in the sun's declination means it will rise due east and set due west just twice a year, during the vernal and autumnal equinoxes. A towel shaped like a curved hourglass that allows only 150 or 120 degrees of rotation

(or even fewer) may be all a heliotropic tanner wants. No matter. Franek's mark still is functional.

Franek's advertisements declare that the round towel is a fashion statement. Fashion is a form of function. A design's aesthetic appeal can be as functional as its tangible characteristics. See *Qualitex Co. v. Jacobson Products Co.*, 514 U.S. 159, 169–70 (1995); *Wal-Mart*, 529 U.S. at 214; *TrafFix*, 532 U.S. at 33; *W.T. Rogers Co. v. Keene*, 778 F.2d 334 (7th Cir. 1985); *Publications International, Ltd. v. Landoll, Inc.*, 164 F.3d 337 (7th Cir. 1998); *Abercrombie & Fitch Stores, Inc. v. American Eagle Outfitters, Inc.*, 280 F.3d 619 (6th Cir. 2002). And many cases say that fashionable designs can be freely copied unless protected by patent law. See, e.g., *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141 (1989); *Sears, Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225 (1964); *Compco Corp. v. Day-Brite Lighting, Inc.*, 376 U.S. 234 (1964); *Kellogg Co. v. National Biscuit Co.*, 305 U.S. 111 (1938); *Singer Manufacturing Co. v. June Manufacturing Co.*, 163 U.S. 169 (1896).

The chief difficulty is distinguishing between designs that are fashionable enough to be functional and those that are merely pleasing. Only the latter group can be protected, because trademark law would be a cruel joke if it limited companies to tepid or repugnant brands that discourage customers from buying the marked wares. We discussed this problem at length in *Keene*. See also *Eco Manufacturing*, 357 F.3d at 654; *Schwinn Bicycle Co. v. Ross Bicycles, Inc.*, 870 F.2d 1176, 1188–91 (7th Cir. 1989). The Supreme Court broached the subject in *Qualitex* when it discussed the functionality of the green-

gold color of a dry cleaning pad. Unwilling to say that the pad required a green-gold hue or was improved by it, the Court still thought that the color would be functional if its exclusive use by a single designer "would put competitors at a significant non-reputation-related disadvantage." 514 U.S. at 165. This is a problem for Franek's round-towel mark.

Franek wants a trademark on the circle. Granting a producer the exclusive use of a basic element of design (shape, material, color, and so forth) impoverishes other designers' palettes. See, e.g., *Brunswick Corp. v. British Seagull Ltd.*, 35 F.3d 1527 (Fed. Cir. 1994) (black color of boat engines is functional because it is compatible with boats of many different colors). *Qualitex*'s determination that "color alone, at least sometimes, can meet the basic legal requirements for use as a trademark" (514 U.S. at 166), means that there is no per se rule against this practice. See also *Thomas & Betts Corp. v. Panduit Corp.*, 138 F.3d 277, 299 (7th Cir. 1998). The composition of the relevant market matters. But the more rudimentary and general the element—all six-sided shapes rather than an irregular, perforated hexagon; all labels made from tin rather than a specific tin label; all shades of the color purple rather than a single shade—the more likely it is that restricting its use will significantly impair competition. See, e.g., *Keene*, 778 F.2d at 343; *Lorillard v. Pride*, 28 F. 434 (C.C.N.D. Ill. 1886); *Saint-Gobain Corp. v. 3M Co.*, 90 U.S.P.Q. 2d 1425 (T.T.A.B. 2007). Franek's towel is of this ilk. He has trademarked the "configuration of a round beach towel." Every other beach towel manufacturer is barred from using the entire shape as well

as any other design similar enough that consumers are likely to confuse it with Franek's circle (most regular polygons, for example).

Contrast Franek's mark with the irregular hexagon at issue in *Keene* or the green-gold hue in *Qualitex*. Those marks restrict few design options for competitors. Indeed, they are so distinctive that competitors' only reason to copy them would be to trade on the goodwill of the original designer. Cf. *Service Ideas, Inc. v. Traex Corp.*, 846 F.2d 1118, 1123–24 (7th Cir. 1988) (purposeful copying of a beverage server's arbitrary design indicated a lack of aesthetic functionality). That's not so here. A circle is the kind of basic design that a producer like Jay Franco adopts because alternatives are scarce and some consumers want the shape regardless of who manufactures it. There are only so many geometric shapes; few are both attractive and simple enough to fabricate cheaply. Cf. *Qualitex*, 514 U.S. at 168–69 (functionality doctrine invalidates marks that would create color scarcity in a particular market). And some consumers crave round towels—beachgoers who prefer curved edges to sharp corners, those who don't want to be "square," and those who relish the circle's simplicity. A producer barred from selling such towels loses a profitable portion of the market. The record does not divulge much on these matters, but any holes in the evidence are filled by the *TrafFix* presumption that Franek's mark is functional, a presumption he has failed to rebut.

Franek chose to pursue a trademark, not a design patent, to protect the stylish circularity of his beach

towel. Cf. *Kohler Co. v. Moen Inc.*, 12 F.3d 632, 647 (7th Cir. 1993) (Cudahy, J., dissenting) (calling Franek's mark a "horrible example[]" of a registered trademark that should have been a design patent). He must live with that choice. We cannot permit him to keep the indefinite competitive advantage in producing beach towels this trademark creates.

If Franek is worried that consumers will confuse Jay Franco's round beach towels with his, he can imprint a distinctive verbal or pictorial mark on his towels. See *Publications International*, 164 F.3d at 343; *Keene*, 778 F.2d at 347–48. That will enable him to reap the benefits of his brand while still permitting healthy competition in the beach towel market.

A<span/>FFIRMED