In the

# United States Court of Appeals

### For the Seventh Circuit

No. 10-3519

GEORGIA-PACIFIC CONSUMER PRODUCTS LP,

*Plaintiff-Appellant,*

*v.*

KIMBERLY-CLARK CORPORATION, et al.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:09-cv-02263—**Virginia M. Kendall**, *Judge.*

ARGUED JUNE 6, 2011—DECIDED JULY 28, 2011

Before KANNE, EVANS, and SYKES, *Circuit Judges.*

EVANS, *Circuit Judge.* Toilet paper. This case is about toilet paper. Are there many other things most people use every day but think very little about? We doubt it. But then again, only a select few of us work in the rarefied air inhabited by top-rate intellectual property lawyers who specialize in presenting and defending claims of unfair competition and trademark infringement

under the Lanham Act, 15 U.S.C. §§ 1051 *et seq.* And the lawyers on both sides of this dispute are truly first-rate. Together they cite some 119 cases and 20 federal statutes (albeit with a little overlap) in their initial briefs. We are told that during the "expedited" discovery period leading up to the district court decision we are called upon to review, some 675,000 pages of documents were produced and more than a dozen witnesses were deposed. That's quite a record considering, again, that this case is about toilet paper.

We'll start by introducing the combatants. In the far corner, from an old cotton-producing state (*Dixie*: "I wish I was in the land of cotton, old times there are not forgotten.") and headquartered in the area (Atlanta) where Scarlett O'Hara roamed Tara in Margaret Mitchell's epic *Gone With the Wind*, we have the Georgia-Pacific Company. Important to this case, and more than a bit ironic, is that the name of Georgia-Pacific's flagship toilet paper is Quilted *Northern*. In the near corner, headquartered in the north, in Neenah, Wisconsin (just minutes away from Green Bay), and a long way from the land of cotton, we have the Kimberly-Clark Corporation. Ironically, its signature toilet paper brand is called *Cotton*elle.

The claim in this case is that a few of Kimberly-Clark's brands of toilet paper are infringing on Georgia-Pacific's trademark design. But again, this case is about toilet paper, and who really pays attention to the design on a roll of toilet paper? The parties, however, are quick to inform us that in a $4 billion dollar industry, designs are very important. Market share and significant profits are at stake. So with that, we forge on.

Georgia-Pacific has been selling toilet paper since 1902. In the early 1990s, it rebranded its toilet paper as Quilted Northern, emphasizing a new diamond-shaped embossed design on the tissue, which gives it the appearance of a quilt. This design—recognizable for the commercials with cartoon quilters[1]—is referred to as the "Quilted Diamond Design." To protect the Quilted Diamond Design, Georgia-Pacific applied for and received several trademarks, copyrights, and utility and design patents. Most relevant to this case are trademarks Reg. Nos. 2,710,741; 1,778,352; 1,806,076; and 1,979,345 and utility patents 5,436,057 ('057 patent); 5,573,830 ('830 patent); 5,597,639 ('639 patent); 5,620,776 ('776 patent); and 5,874,156 ('156 patent). The same lattice designs depicted in Georgia-Pacific's trademarks appear in the five utility patents.



Reg. No. 2,710,741     Reg. No. 1,778,352     Reg. No. 1,806,076     Reg. No. 1,979,345

'057, '156, and '639 patents          '776 and '830 patents

---

[1] A video of a 2003 Quilted Northern advertisement featuring the quilters is available at: http://www.youtube.com/watch?v=ttoiVqy8C3c&feature=related (last visited June 21, 2011).

In 2008, Georgia Pacific discovered that Kimberly-Clark, one of its main competitors in the toilet paper industry, had redesigned its Cottonelle Ultra bath tissue and Scott Kimberly-Clark Professional. Both products used a quilted design which Georgia-Pacific believed to be very similar to its Quilted Diamond Design.

Georgia-Pacific unrolled this suit against Kimberly-Clark, alleging unfair competition and trademark infringement under the Lanham Act, for Kimberly-Clark's introduction of its redesigned toilet paper.[2] Kimberly-Clark moved for summary judgment, arguing that Georgia-Pacific's Quilted Diamond Design is functional and therefore cannot be protected as a registered trademark. The district judge agreed and granted Kimberly-Clark's motion. Georgia-Pacific now appeals.

We review the district judge's grant of summary judgment *de novo*, viewing all facts in favor of the nonmoving party. *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 502 (7th Cir. 2004). Summary judgment is appropriate where the admissible evidence shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Therefore, despite the fact that the judge dutifully plied her opinion, we now wipe the slate clean and address Georgia-Pacific's claims.

---

[2] Georgia-Pacific later filed another suit against Kimberly-Clark for its introduction of Scott Extra Soft bath tissue, also claiming it infringed the Quilted Diamond Design. The district judge consolidated the two actions.

Under the Lanham Act, registration of a trademark creates a rebuttable presumption that the mark is valid, but the presumption "evaporates as soon as evidence of invalidity is presented." *Door Systems, Inc. v. Pro-Line Door Systems, Inc.*, 83 F.3d 169, 172 (7th Cir. 1996). Thus, the burden of proof originates with the party seeking to invalidate the registered mark. But if that party can put forward strong evidence of functionality, the mark holder carries a "heavy burden of showing that the feature is not functional, for instance by showing that it is merely an ornamental, incidental, or arbitrary aspect of the device." *TrafFix Devices v. Marketing Displays, Inc.*, 532 U.S. 23, 30 (2001); *Eco Manufacturing LLC v. Honeywell International, Inc.*, 357 F.3d 649, 653 (7th Cir. 2003). Here, the burden of proof lies with Kimberly-Clark, but Kimberly-Clark can shift that burden to its opponent by producing strong evidence of functionality.

Georgia-Pacific begins by arguing that summary judgment was inappropriate because functionality is an issue of fact. While Georgia-Pacific is correct, we have recently held that the functionality of an asserted design can be determined on summary judgment in appropriate cases. *See Jay Franco & Sons, Inc. v. Franek*, 615 F.3d 855, 857 (7th Cir. 2010); *see also TrafFix*, 532 U.S. at 34-35.

Georgia-Pacific also argues that its trademarks are "incontestable" under 15 U.S.C. § 1065. Unfortunately for Georgia-Pacific, incontestable is not invincible; the Lanham Act lists a number of affirmative defenses an alleged infringer can use, including showing that the mark is "functional." *See* 15 U.S.C. § 1115(b)(8); *Franek*, 615

F.3d at 857. As we explained in *Franek*, "patent law alone protects useful designs from mimicry; the functionality doctrine polices the division of responsibilities between patent and trademark law by invalidating marks on useful designs." *Id.*; *see also Qualitex Co. v. Jacobson Products Co., Inc.*, 514 U.S. 159, 164 (1995). In other words, if the Quilted Diamond Design is functional, the trademark is invalid.

In *TrafFix*, the Supreme Court found that a design is functional "if it is essential to the use or purpose of the article or if it affects the cost or quality of the article." 532 U.S. at 32 (internal citations and quotations omitted). Courts look to several factors to determine whether a design is functional:

> (1) the existence of a utility patent, expired or unexpired, that involves or describes the functionality of an item's design element; (2) the utilitarian properties of the item's unpatented design elements; (3) advertising of the item that touts the utilitarian advantages of the item's design elements; (4) the dearth of, or difficulty in creating, alternative designs for the item's purpose; (5) the effect of the design feature on an item's quality or cost.

*Specialized Seating, Inc. v. Greenwich Industries, L.P.*, 472 F. Supp. 2d 999, 1011 (N.D. Ill. 2007); *see also Valu Engineering Inc. v. Rexnord Corp.*, 278 F.3d 1268, 1274 (Fed. Cir. 2002).

Kimberly-Clark argues, correctly we think, that Georgia-Pacific's trademarks covering the Quilted Diamond Design overlap with the '057, '156, '639, '776, and '830

utility patents and are strong evidence of functionality. In *Franek,* we found that "utility patents serve as excellent cheat sheets [for determining functionality] because any design claimed in a patent is supposed to be useful." 615 F.3d at 857; *see also TrafFix*, 532 U.S. at 29 (finding that expired utility patents are "strong evidence that the features therein claimed are functional"). Specifically, if the "central advance" claimed in the utility patent matches the "essential feature" of the trademark, there is strong evidence that the design is functional. *TrafFix*, 532 U.S. at 30.

As an initial matter, Georgia-Pacific argues on appeal, as it did in the district court, that the patents cover the manufacturing method or techniques of "offsetting" the pattern and "varying the depth" of the embossed elements, and not the design itself. But as the district judge found, a patent claim involving a tangible item is different from a claim relating to a process. *See In re Kollar*, 286 F.3d 1326, 1332 (Fed. Cir. 2002). There is no question that the patents at issue refer to toilet paper—a tangible product—and not the step-by-step approach to creating it.

We therefore turn to the actual trademarks and patents. The parties agree that the essential feature of the trademarks is the Quilted Diamond Design, which is embossed on the toilet paper, giving it a quilt-like appearance. *See* Reg. Nos. 2,710,741; 1,778,352; 1,806,076; and 1,979,345. Therefore, the question is whether the Quilted Diamond Design is also the "central advance" claimed in any of the utility patents. Unfortunately for Georgia-Pacific, all

five utility patents disclose a diamond lattice design filled with signature bosses and claim the benefits of this design as the "central advance." For example, the '830 patent discloses a "sheet of tissue" with a "nonwoven fibrous web" that exhibits "puffiness and bulk"; the '776 patent references "diamond shaped cells" and a "sheet of tissue exhibiting puffiness and bulk" that minimizes "nesting"; the '057 patent claims a "lattice pattern . . . filled with a signature debossment" that reduces "nesting"; and the '639 patent notes that embossing a lattice design and the signature bosses at different heights can achieve utilitarian benefits. Each of the patents discusses the benefits of the Quilted Diamond Design. Kimberly-Clark argues that this language is strong evidence of functionality. We agree.

Georgia-Pacific argues, however, that the Quilted Diamond Design is merely "incidental" under *TrafFix*. Accordingly, we will "[go] beyond" the patent claims to the specifications. *See TrafFix*, 532 U.S. at 34. The abstracts for the '639 and '156 patents state that "[t]he perceived *softness of embossed tissue can be increased greatly while avoiding nesting* when a particular pattern is embossed into the tissue." (Emphasis added.) The '776 abstract describes that patent as "[a]n embossed tissue having *improved bulk and puffiness* while being non-nesting by having a lattice pattern and at least two signature bosses." (Emphasis added.) And the '057 patent states that "[t]his invention relates to the discovery that *perceived softness of embossed tissue can be increased greatly while avoiding prior art nesting problems if a particular pattern is embossed into the tissue*." (Emphasis added.) So

Georgia-Pacific's argument fares no better here; these abstracts all refer to the Quilted Diamond Design's utilitarian benefits of softness, bulk, and non-nesting.

Moreover, the patents claim the Quilted Diamond Design as the "most preferred embodiment." (The preferred embodiment of the '057 patent is a lattice pattern of diamond cells filled with signature debossments; the most preferred embodiment for the '639 patent is a lattice comprised of "diamond shaped" cells filled with a "signature boss.") And while the preferred embodiment alone is not definitive of functionality, the language Georgia-Pacific uses in the preferred embodiment (a lattice pattern filled with hearts and flowers) matches the language in the claims (a lattice structure and diamond-shaped cells). As with the language in the specifications, the consistency in language between the preferred embodiment and the claims is evidence of functionality.

Thus, reading the language of the patents, we find that the "central advance" claimed in the utility patents is embossing a quilt-like diamond lattice filled with signature designs that improves (perceived) softness and bulk, and reduces nesting and ridging. This is the same "essential feature" claimed in the trademarks. Thus, the language of the patents—the claims, abstracts, and preferred embodiment—is "strong evidence" that the Quilted Diamond Design is functional, and Georgia-Pacific has failed to offer evidence that the design is merely incidental.

Georgia-Pacific also argues that the existence of design patents precludes a finding of functionality, or at least

is evidence of non-functionality. But, like a trademark, design patents do not preclude a finding of functionality. *See Eco Manufacturing*, 357 F.3d at 653 (affirming district court denial of preliminary injunction due to functionality of design even though design had been protected by expired design patent)*; Talking Rain Beverage Co., Inc. v. South Beach Beverage Co.*, 349 F.3d 601, 605 n.3 (9th Cir. 2003). Therefore, we agree with the district judge—the functionality of the Quilted Diamond Design remains undisturbed by the design patents because of the utilitarian benefits that are clearly disclosed in the utility patents.

Georgia-Pacific next asserts that expert testimony creates a genuine issue of material fact. First, we note that because we can readily discern the scope and content of the utility patents at issue from the drawings, specifications, and claims, it is unnecessary to rely on extrinsic evidence, such as expert testimony. *Kara Technology, Inc. v. Stamps.com, Inc.*, 582 F.3d 1341, 1348 (Fed. Cir. 2009); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1584 (Fed. Cir. 1996) ("[T]he expert testimony, which was inconsistent with the specification and file history, should have been accorded no weight."). Therefore, to the extent that the experts' opinions on how to read a patent conflict with the actual language of the patent, that conflict "does not create a question of fact nor can the expert opinion bind the court or relieve the court of its obligation to construe the claims according to the tenor of the patent." *Modine Manufacturing Co. v. U.S. International Trade Commission*, 75 F.3d 1545, 1550 (Fed. Cir. 1996) (internal citation omitted) (abrogated on other grounds).

Here, Georgia-Pacific presented expert testimony that the utilitarian benefits of the Quilted Diamond Design are not the result of the particular pattern but, rather, the technique used to emboss the tissue, and that embossing is not required to produce soft tissue. But to the extent that the experts' testimony conflicts with our findings—findings derived from the language of the patents—we afford it no weight, and it does not create a question of fact.

Georgia-Pacific also claims, in the alternative, that while the Quilted Diamond Design might have been functional once, it is no longer functional. According to Georgia-Pacific, this is critical because "technological change can render designs that were functional years ago no longer so." *Franek*, 615 F.3d at 859. Georgia-Pacific is correct. We held in *Eco Manufacturing* that "what was once functional may . . . later be ornamental. Passage of time diminishes a utility patent's significance." 357 F.3d at 653. But in both of the cases Georgia-Pacific cites, the patents at issue had expired, whereas here the '830 and '776 patents are still active. Indeed, in *Franek* we noted that "more recent patents are often *better* evidence" of functionality. 615 F.3d at 859. Thus, Georgia-Pacific's claim that even if the Quilted Diamond Design was once functional it no longer is, does not hold water; two of the patents at issue in this case are still in effect. Accordingly, the first factor weighs heavily in favor of finding functionality.

Because the second factor—the utilitarian properties of the unpatented design elements—is not at issue in this

case, we move to third factor of functionality: whether advertising touts the utilitarian advantages of the asserted design. Georgia-Pacific's advertisements include the following claims: (1) "Quilted to Absorb"; (2) "Quilted to create thousands of places for moisture to go"; (3) "Our two softest layers of premium tissue are gently quilted together to give you and your family exceptional softness and comfort"; and (4) "Quilted Northern Ultra with a unique new quilted design for more quilting and comfort than ever before."

Georgia-Pacific makes two claims with regard to these advertisements. First, it argues that they are mere puffery and, therefore, not factual statements about the product. But looking to the ads, the district judge was spot-on in noting that the language "links the quilted feature to numerous utilitarian benefits, such as softness, comfort, and absorption," further affirming that the Quilted Diamond Design is functional. *See Franek*, 615 F.3d at 859 (finding that a product's functionality was bolstered by the advertisements, which highlighted the functional aspect of the design).

Second, Georgia-Pacific argues that its advertising creates a genuine issue of material fact. Georgia-Pacific relies on *Thomas & Betts Corp. v. Panduit Corp.*, 138 F.3d 277, 299-300 (7th Cir. 1998), a case in which we reversed summary judgment because a material question of fact existed concerning whether advertisements touted functional aspects of trade dress. But, as Kimberly-Clark notes, *Thomas & Betts* is distinguishable; in that case it was unclear whether the advertisements were about the

asserted design feature (an oval-shaped cable tie head) or other features of a cable tie, while here, the language in the ads is clear—the Quilted Diamond Design is unequivocally linked to functional benefits such as absorbency, softness, and comfort. Georgia-Pacific's ads do not create a genuine issue of material fact. *See In re Bose Corp.*, 772 F.2d 866, 871-72 (Fed. Cir. 1985) (finding that advertisements were strong evidence of functionality when Bose advertised the shape of its speaker as a performance-enhancing part of the sound system).

The next factor in determining functionality is the availability of alternative designs for the item's purpose. Georgia-Pacific argues that the toilet paper can be embossed with any number of designs, such as octagons or hexagons (as it mentioned in the '776 and '830 patents), and still possess the same utilitarian benefits as the Quilted Diamond Design. But as we noted in *Specialized Seating, Inc. v. Greenwich Industries, L.P.,* the design in question does not have to be the *only* possible design to be functional; rather, it is functional if it "represents *one of many solutions* to a problem." 616 F.3d 722, 727 (7th Cir. 2010) (emphasis added). And like in *Specialized Seating*, we do not doubt that there are many other available functional designs for toilet paper (indeed, market-leader Charmin proves there are), but if the Quilted Diamond Design is a solution to a problem, as Georgia-Pacific claimed it to be in its patents, it is functional and thus remains in the sphere of patent protection and not in that of trademark. *Id*. Accordingly, because we find the design to be functional, the fact that there are numerous alternative designs does not, on its own, render the design nonfunctional and incidental. *Id*.

The final factor of functionality concerns the effect of the design on a item's quality or cost. Here, Kimberly-Clark asserts only that the Quilted Diamond Design affects the quality of the bath tissue, and so we will focus our inquiry there. Kimberly-Clark argues that the utility patents' claims and specifications explicitly note that the Quilted Diamond Design improves softness and comfort, increases bulk, enhances roll structure, and prevents nesting and ridging—all claims of quality. Kimberly-Clark also notes that Georgia-Pacific's ads highlight the same benefits of the design. Georgia-Pacific's own language, in both the utility patents and the advertisements, consistently refers to the increased quality—softness, comfort, bulk, and reduced nesting and ridging—when using the Quilted Diamond Design. We agree with the district judge that Georgia-Pacific's own claims tout the improved quality of the product due to the Quilted Diamond Design.

We thus find that Kimberly-Clark has produced strong evidence of functionality, and Georgia-Pacific has failed to prove that the design is incidental. In *Franek* and *Specialized Seating*, we explained that functionality polices the division between patent and trademark law, and if a design is functional the owner cannot trademark the design and block innovation. Georgia-Pacific, whether intentionally or not, patented their Quilted Diamond Design and claimed it to be functional. They must now live with that choice and can benefit only under the protection of a patent, not that of a trademark.

We next address Georgia-Pacific's claim that the district judge erred in failing to address whether Kimberly-

Clark infringed Georgia-Pacific's trademarks by using the design on its packaging. Georgia-Pacific argues that regardless of whether the Quilted Diamond Design on the toilet paper is functional, it absolutely is not functional when used on packaging. But if a product is functional and thus unregistrable, as we have found the Quilted Diamond Design to be, then "the accurate depiction of that [product] is also unregistrable." *In re CNS, Inc.*, No. 76250116, 2005 WL 3175107 at *6 n.11 (T.T.A.B. Nov. 18, 2005); *Textron Inc. v. Pilling Chain Co., Inc.*, 175 U.S.P.Q. (BNA) 621, 622 (T.T.A.B. 1972) (one cannot claim trademark right in the configuration or illustration of a purely functional item); *see also* 1 J. Thomas McCarthy, McCarthy on Trademarks & Unfair Competition § 7:37 (4th ed. 2009) ("No one competitor should have the exclusive right to show a picture of a functional product. This would be the competitive equivalent of an exclusive right to the generic name of the product, which no one can own."). Thus, Georgia-Pacific cannot trademark the Quilted Diamond Design on its packaging for the same reason it cannot trademark the design on the toilet paper—the design is functional.

Finally, Georgia-Pacific argues that laches bars Kimberly-Clark from asserting the functionality defense. To establish laches, Georgia-Pacific must show that Kimberly-Clark unreasonably delayed in asserting its functionality defense, and that Georgia-Pacific reasonably relied upon, and was prejudiced by, the delay. *Maher v. City of Chicago*, 547 F.3d 817, 822 (7th Cir. 2008); *see also Chattanoga Mfg., Inc. v. Nike, Inc.*, 301 F.3d 789, 792-93 (7th

Cir. 2002) (noting that in trademark cases, laches applies where the defendant can show "that the plaintiff had knowledge of the defendant's use of an allegedly infringing mark . . . that the plaintiff inexcusably delayed in taking action with respect to the defendant's use, and that defendant would be prejudiced by allowing the plaintiff to assert its rights at this time").

According to Georgia-Pacific, Kimberly-Clark knew about the utility patents for at least a decade, and therefore cannot now use functionality as an affirmative defense. Kimberly-Clark claims, however, that it did not sleep on its rights because until Georgia-Pacific sued, it had no obligation or reason to challenge the validity of Georgia-Pacific's trademark registrations. *Anderson v. Board of Regents of the Univ. of Wisconsin System*, 140 F.3d 704, 707 (7th Cir. 1998) ("A target of a potential lawsuit has no obligation, however, to point out the flaws in the complainant's action before the suit is even filed with the court."). Moreover, the Lanham Act does not permit the filing of a trademark cancellation claim in federal court absent an independent basis for federal jurisdiction, such as a claim of infringement of the registered mark. *Ditri v. Coldwell Banker Residential Affiliates, Inc.*, 954 F.2d 869, 873-74 (3d Cir. 1992). Kimberly-Clark did not delay in raising functionality as an affirmative defense; it did so in response to Georgia-Pacific's claims. Therefore, there was no inexcusable delay or prejudice, and laches does not apply.

For the foregoing reasons, Georgia-Pacific's Quilted Diamond Design is functional and therefore cannot

be trademarked. The judgment of the district court is AFFIRMED.