In the

# United States Court of Appeals

## For the Seventh Circuit

No. 19-3534

JOSHUA YOUNG,

*Plaintiff-Appellant,*

*v.*

CITY OF CHICAGO, NATHANIEL WARNER,
ROBERT PERAINO, and ANTHONY PAVONE,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 17-C-4803 — **Elaine E. Bucklo**, *Judge*.

ARGUED DECEMBER 4, 2020 — DECIDED FEBRUARY 5, 2021

Before KANNE, WOOD, and SCUDDER, *Circuit Judges*.

KANNE, *Circuit Judge*. Plaintiff Joshua Young sued the City of Chicago and several of its police officers for detaining him without probable cause while he awaited trial for being an armed habitual criminal.

Describing this case decides the outcome, to wit: Chicago police officers lawfully stopped Young while he was driving.

A gun was found next to Young in the car. And Young is a convicted felon. That's textbook probable cause. It does not matter that Young said the gun wasn't his—protesting innocence is not a get-out-of-pretrial-detention-free card. Nor does it matter that the police allegedly falsified evidence at the station later on—they had all the probable cause they needed from the arrest scene alone.

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). Young's pretrial detention fell squarely within that exception. We thus affirm the district court's decision granting summary judgment to Defendants.

## I. BACKGROUND

The following facts are stated in the light most favorable to Young as the nonmovant. In 2015, Plaintiff Joshua Young drove Corey Hughes to get a haircut in Chicago. While driving, Hughes told Young that he had a gun. Young started to turn around and told Hughes to take the gun back. But Hughes responded that he would return the gun to its owner at the barbershop. Young then dropped Hughes off for a haircut and came back several hours later to pick him up. Young did not ask Hughes about the gun, but he believed that Hughes had left it at the barbershop.

That same day, Chicago police officers received an anonymous tip that Young and Hughes were driving around with a gun in their car. The officers eventually spotted the vehicle and saw that Hughes was not wearing a seatbelt. They pulled the car over (which all parties agree was lawful), approached

it with guns drawn, and yelled "freeze" and "let me see your hands."

Hughes told Young, "take this," but Young yelled back, "hell no." So Hughes wiped the gun and placed it on the car's center console. Young then put up his hands and exited the car.

The officers saw this commotion take place inside the car and saw the gun on the console. Young said that it belonged to Hughes. But the officers arrested them both.

While questioning Young, the officers learned that he and Hughes were convicted felons. Young repeated that he did not own the gun, and he provided a written statement describing the events set forth above. The officers destroyed Young's first version of the statement and made him write a second, more incriminating version that did not recount several exonerating facts, such as Young's belief that Hughes left the gun at the barbershop. One of the officers then acknowledged that Hughes owned the gun. He told Young that he would be released shortly.

Hughes, for his part, told the officers that the gun belonged to a gang and argued that he could not have carried the gun because he was wearing sweatpants and was on crutches.

The officers prepared various police reports that all listed Hughes as the possessor and owner of the gun. They next relayed Young's written statement to the State's Attorney's office, which approved felony charges against Young for being an armed habitual criminal, among other charges. The officers then signed a criminal complaint against Young.

A week after his arrest, Young appeared at a preliminary hearing in the Circuit Court of Cook County, Illinois. The judge found probable cause to detain him and set a $100,000 bond. Young could not pay the bond and stayed in pretrial detention for over a year. The prosecution proceeded to trial solely on the armed habitual criminal charges. Young was acquitted.

Young then sued Chicago and several of its police officers under 42 U.S.C. § 1983 for violating various state and federal laws, including the Fourth Amendment and the Due Process Clause, by holding him in pretrial detention without probable cause and by ignoring and fabricating evidence to detain him. Young's other claims—for malicious prosecution, conspiracy, failure to intervene, *respondeat superior* liability, and indemnification—all stemmed from his Fourth Amendment and due process claims.

Defendants sought summary judgment on all counts because the officers had probable cause to detain Young and because unlawful pretrial detention cannot give rise to a due process claim. The district court agreed and entered judgment in favor of Defendants. Young now appeals.

## II. ANALYSIS

We review the district court's summary judgment order *de novo*. *Flexible Steel Lacing Co. v. Conveyor Accessories, Inc.*, 955 F.3d 632, 643 (7th Cir. 2020) (citing *Ga.-Pac. Consumer Prods. LP v. Kimberly-Clark Corp.*, 647 F.3d 723, 727 (7th Cir. 2011)). "Summary judgment is appropriate when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)). "We draw 'all justifiable inferences' in the favor of the

nonmoving party." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) (citing *AutoZone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir. 2008)).

*A. Fourth Amendment*

The Fourth Amendment prohibits unreasonable searches and seizures. "[P]retrial detention is a 'seizure'—both before formal legal process and after—and is justified only on probable cause" to believe that the detainee has committed a crime. *Lewis v. City of Chicago*, 914 F.3d 472, 477 (7th Cir. 2019) (citing *Manuel v. City of Joliet* (*Manuel I*), 137 S. Ct. 911, 918 (2017)).

"[P]robable cause is a common-sense inquiry requiring only a probability of criminal activity; it exists whenever an officer or a court has enough information to warrant a prudent person to believe criminal conduct has occurred." *Whitlock v. Brown*, 596 F.3d 406, 411 (7th Cir. 2010) (citing *Illinois v. Gates*, 462 U.S. 213, 244 n.13 (1983)). This "is not a high bar." *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018) (quoting *Kaley v. United States*, 571 U.S. 320, 338 (2014)). It is "assessed objectively" based on "the conclusions that the arresting officer reasonably might have drawn from the information known to him." *Holmes v. Village of Hoffman Estates*, 511 F.3d 673, 679 (7th Cir. 2007) (citing *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004); *Whren v. United States*, 517 U.S. 806, 812–13 (1996)).

Young argues that the officers violated his Fourth Amendment rights by detaining him without probable cause before his trial for being an armed habitual criminal. Under Illinois law, "[a] person commits the offense of being an armed habitual criminal if he … possesses … any firearm after having been convicted a total of 2 or more times of" certain felonies.

720 Ill. Comp. Stat. 5/24-1.7. All parties agree that Young had been convicted of two or more predicate felonies at the time of his arrest. Young does not argue that the officers lacked the knowledge of this fact necessary to detain him. The only question, then, is whether the officers had probable cause to believe that Young possessed a firearm.

We conclude that the officers had such probable cause because they found a gun right next to Young in the car he was driving. That scene provided more than enough information for the officers to believe that Young possessed the gun. *United States v. Longmire*, 761 F.2d 411, 420 (7th Cir. 1985) ("Having discovered the handgun in the car during a lawful search, [the officers] had probable cause to arrest the occupants for possession of a firearm.").

Young nonetheless points to several discrete facts that he contends should defeat probable cause. But none of them change our minds.

Young first argues that the officers should have cleared him once he pointed the finger and told them that the gun belonged to Hughes. Not so. "Many putative defendants protest their innocence, and it is not the responsibility of law enforcement officials to test such claims once probable cause has been established." *Spiegel v. Cortese*, 196 F.3d 717, 724 (7th Cir. 1999). That's a task for trial.

Second, Young argues that because the officers had a clear line of sight to the interior of the car as they approached it, they saw Hughes—not Young—place the gun on the console. And this was confirmed, Young says, by the police reports that listed Hughes as the gun's owner.

Indeed, an officer "may not close his eyes to facts that would clarify the situation" and defeat probable cause. *See McBride v. Grice*, 576 F.3d 703, 707 (7th Cir. 2009) (citations omitted). But that doesn't help Young because even if the officers saw Hughes handle the gun, they still had probable cause to believe that Hughes *and* Young possessed it jointly. *People v. Hill*, 589 N.E.2d 1087, 1089 (Ill. App. Ct. 1992) ("[T]he exclusive dominion and control required to establish constructive possession is not diminished by evidence of others' access to the contraband. When the relationship of others to the contraband is sufficiently close to constitute possession, the result is not vindication of the defendant, but rather a situation of *joint* possession." (alteration omitted) (quoting *People v. Williams*, 424 N.E.2d 1234, 1237 (Ill. App. Ct. 1981))). And the police reports do not alter the facts on the ground; Young was sitting next to the gun.

Young finally points to his allegations that the police falsified evidence against him after his arrest—most notably, by destroying his first written statement. But even assuming the police did so, they still had probable cause to detain Young pending trial. Once more, at the risk of sounding like a broken record, the officers found Young with a gun next to him in the car that he was driving. They didn't need anything else.

Although our conclusion is straightforward, we take seriously Young's allegations of severe police misconduct. We have no trouble imagining a case in which allegations of police misconduct—even misconduct that occurs after an arrest—could impugn officers' basis for probable cause at the time of arrest. This just is not that case because the scene of arrest, even as Young describes it and even accepting all of the

police misconduct as true, gave the officers adequate probable cause to detain him.

*B. Due Process*

Young argues that the police violated his due process rights by both fabricating evidence and withholding exculpatory evidence in order to detain him before trial. But as Young admits, our decision in *Lewis* precludes this claim.

*Lewis* was a § 1983 case, like this one, in which the plaintiff argued that "misconduct by law enforcement—falsifying the police reports that led to his pretrial detention—… violated his right to due process." *Lewis*, 914 F.3d at 478. We rejected this claim because, according to the Supreme Court's decision in *Manuel I*, "the Fourth Amendment, not the Due Process Clause, governs a claim for wrongful pretrial detention." *Id.* at 475.

If in *Lewis* we did not let the plaintiff's due process claim proceed when the police falsified "reports that *led* to his pretrial detention," *id.* at 478 (emphasis added), we certainly will not let Young's due process claim proceed when the alleged police misconduct did not lead to his pretrial detention. As explained, the probable cause from his scene of arrest did.

Young nevertheless argues that we should overturn *Lewis* because it incorrectly narrowed the scope of the due process clause. He specifically notes that "[w]e have consistently held that a police officer who manufactures false evidence against a criminal defendant violates due process if that evidence is later used to deprive the defendant of her liberty in some way." *Whitlock v. Brueggemann*, 682 F.3d 567, 580 (7th Cir. 2012).

We reject this call. *Lewis* was based on *Manuel I*—a Supreme Court decision that we are bound to follow. And Young has not demonstrated that *Lewis* misinterpreted *Manuel I.* The Supreme Court there stated that a Fourth Amendment violation can occur "when legal process itself goes wrong—when, for example, a judge's probable-cause determination is predicated solely on a police officer's false statements. … And for that reason, [legal process] cannot extinguish the detainee's Fourth Amendment claim—or somehow … convert that claim into one founded on the Due Process Clause." *Manuel I*, 137 S. Ct. at 918–19 (citing *Manuel v. City of Joliet*, 590 F. App'x 641, 642–43 (7th Cir. 2015)). The Court then concluded, "If the complaint is that a form of legal process resulted in pretrial detention unsupported by probable cause, then the right allegedly infringed lies in the Fourth Amendment." *Id.* at 919.

The court did not say that the right "could lie" in the Fourth Amendment. It said that the right lies there. We will continue to heed that instruction.

Young's reliance on *Whitlock* is also unpersuasive. In *Whitlock*, we stated that falsifying evidence "violates due process *if that evidence is later used to deprive the defendant of her liberty in some way.*" *Whitlock*, 682 F.3d at 580 (emphasis added). As explained, the alleged police misconduct here did not deprive Young of any liberty; his pretrial detention was lawful even if the misconduct occurred.

Young claims, though, that he suffered a broader liberty harm than mere pretrial detention. Namely, he argues that the alleged police misconduct influenced his bond amount and his preliminary hearing. But as the district court put it, that's

just another way of saying it affected his pretrial detention, which is protected by the Fourth Amendment alone.

Young also says that the misconduct affected the prosecutor's charging decision. But that is not a liberty harm. "[T]here is no such thing as a constitutional right not to be prosecuted without probable cause." *Manuel v. City of Joliet*, 903 F.3d 667, 670 (7th Cir. 2018) (alteration in original) (quoting *Serino v. Hensley*, 735 F.3d 588, 593 (7th Cir. 2013)).

As a final note, Young is not left in the lurch without a due process claim. He had—and pursued—an avenue for relief under the Fourth Amendment. He just didn't succeed. We will not subvert Supreme Court precedent by adding a due process claim to the mix just so he can have another bite at the apple.

### C. Remaining Claims

Young's claim for malicious prosecution fails for the same reason that his Fourth Amendment claim fails—the officers had probable cause to detain him. *Martinez v. City of Chicago*, 900 F.3d 838, 849 (7th Cir. 2018) ("To state a claim for malicious prosecution under Illinois law, a plaintiff must allege that: (1) he was subjected to judicial proceedings; (2) for which there was no probable cause … ." (quoting *Sneed v. Rybicki*, 146 F.3d 478, 480–81 (7th Cir. 1998))).

Young's remaining claims for conspiracy, failure to intervene, *respondeat superior* liability, and indemnification derive entirely from his Fourth Amendment and due process claims. Because we affirm the district court's decision entering summary judgment in favor of Defendants on those two antecedent claims, we will not revive any of the derivative claims.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the decision of the district court.