In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-3416

ARLINGTON SPECIALTIES, INC.,

*Plaintiff-Appellant,*

*v.*

URBAN AID, INC.,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:13-cv-04180 — **Sharon Johnson Coleman**, *Judge.*

ARGUED SEPTEMBER 15, 2016 — DECIDED JANUARY 27, 2017

Before FLAUM, MANION, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* This Lanham Act case turns on
whether the shape and design of a small bag, modeled after
a men's Dopp Kit and used in personal care kits, are func-
tional and therefore not protected as trade dress. Plaintiff
sells personal care kits in such a bag. When another personal
care kit seller copied plaintiff's bag, plaintiff sued, claiming
the bag was protected trade dress. The district court granted
summary judgment in defendant's favor, finding that the

bag's design and shape were functional. We agree, so we af-firm the district court's decision.

I.  *Factual and Procedural Background*

Plaintiff Arlington Specialties, Inc. does business as Pinch Provisions. It sells personal care kits: small bags containing small portable toiletries like hairspray, stain remover, and deodorant. Plaintiff's products include a line of kits called "Minimergency Kits," which come in small fabric bags de-signed to look like men's Dopp Kits (ironically enough, a now-cancelled trademark for travel kits, originally for men's shaving gear, used widely by the military in World War II). A picture of plaintiff's bag is Appendix A to this opinion.

Defendant Urban Aid, Inc. also sells personal care kits. It agreed to create a custom kit for a shoe distributor that wanted to use the kits as part of a sales promotion. The shoe distributor wanted the kits to come in a bag similar to plain-tiff's bag, and it gave Urban Aid a picture of plaintiff's bag to work from. Urban Aid obliged; side-by-side images of the two parties' bags are Appendix B to this opinion.

After the shoe distributor began its sales promotion, plaintiff filed suit in the Northern District of Illinois. It claimed that the shape and design of its bag were protected trade dress, that Urban Aid's bag violated the Lanham Act, the Illinois Uniform Deceptive Trade Practices Act, and the Illinois Consumer Fraud and Deceptive Business Practices Act, and that Urban Aid's bag tortiously interfered with plaintiff's prospective business relations.

Urban Aid moved for summary judgment on four grounds: that plaintiff's trade dress was generic, that it was functional, that it lacked secondary meaning, and that Urban

Aid's design caused no likelihood of confusion. The district court found that plaintiff's claimed trade dress was functional as a matter of law. *Arlington Specialties, Inc. v. Urban Aid, Inc.*, No. 13 CV 4180, 2014 WL 4913531, at *3 (N.D. Ill. Sept. 30, 2014). Because all of plaintiff's claims depend on whether the claimed trade dress is protectable, the court granted summary judgment for the defendant on the federal Lanham Act claim and the related state-law claims. *Id.* at *4. Plaintiff has appealed.

II. *Analysis*

We review *de novo* a district court's grant of summary judgment; we view the evidence in the light reasonably most favorable to the non-moving party and must affirm if no reasonable trier of fact could find in favor of the non-moving party. *White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016). We agree with the district court that the undisputed facts show here that plaintiff's claimed trade dress is functional and therefore not protected by the Lanham Act.

A. *Trade Dress and Functionality*

The Lanham Act establishes a cause of action against any "person who … in connection with any goods or services" uses "any word, term, name, symbol, or device" which "is likely to cause confusion" as to the good or service's source. 15 U.S.C. § 1125(a)(1)(A). That protection can extend to "trade dress," such as the design or packaging of a product that is so distinctive as to identify the manufacturer or source. *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 28 (2001); *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992); *Blau Plumbing, Inc. v. S.O.S. Fix-It, Inc.*, 781

F.2d 604, 608 (7th Cir. 1986) ("trade dress is a form of trade-mark").

Such trade dress cannot "be used in a manner likely to cause confusion as to the origin" of the product. *TrafFix Devices*, 532 U.S. at 28. This feature of trademark law presents both an opportunity for producers and a potential threat to consumers. Other forms of federal intellectual property — patents and copyrights — come with time limits, after which competitors and the public are free to copy the protected item. Trademark protection does not expire, though, as long as the protected mark is being used in commerce to designate the origin of a product. See *id.* at 29.

The doctrine of functionality imposes a critical limit on trade dress rights because "product design almost invariably serves purposes other than source identification." *TrafFix Devices*, 532 U.S. at 29, quoting *Wal-Mart Stores, Inc. v. Samara Brothers, Inc.*, 529 U.S. 205, 213 (2000). Because trademark protection for trade dress has no time limit, giving one competitor a perpetual and exclusive right to a useful product feature would result in a perpetual competitive advantage. See *Qualitex Co. v. Jacobson Products Co.*, 514 U.S. 159, 165 (1995). "The Lanham Act does not exist to reward manufacturers for their innovation in creating a particular device; that is the purpose of the patent law and its [limited] period of exclusivity." *TrafFix Devices*, 532 U.S. at 34. When the trade dress is unregistered (as plaintiff's is), the party seeking protection has the burden to show it is not functional. 15 U.S.C. § 1125(a)(3).

In *TrafFix Devices*, the Supreme Court embraced two tests for functionality from its precedents. See *Eppendorf-Netheler-Hinz GmbH v. Ritter GmbH*, 289 F.3d 351, 355–56 (5th Cir.

2002) (explaining the two *TrafFix* definitions of functionality); Brett Ira Johnson, *Trade Dress Functionality: A Doctrine in Need of Clarification*, 34 Campbell L. Rev. 125, 129 (2011) (same). A product feature is functional, the Court said, "if it is essential to the use or purpose of the article or if it affects the cost or quality of the article." *TrafFix Devices*, 532 U.S. at 32, quoting *Qualitex*, 514 U.S. at 165. Even if a product feature does not satisfy that definition, it can still be functional if it is a "competitive necessity," that is, if its exclusive use "would put competitors at a significant non-reputation-related disadvantage." *Id.* at 32–33, quoting *Qualitex*, 514 U.S. at 165.

In an effort to narrow the doctrine of functionality, plaintiff emphasizes the latter verbal formulation using the concept of necessity. Plaintiff argues that summary judgment can be affirmed only if its competitors "must" be able to use its claimed trade dress to compete. In *TrafFix Devices*, however, the Supreme Court rejected exclusive reliance on that definition. The Court explained (a) that competitive necessity is "incorrect as a comprehensive definition" of functionality and (b) that a feature is functional when it "affects the cost or quality of the device." 532 U.S. at 33; accord, *Eco Manufacturing LLC v. Honeywell Int'l, Inc.*, 357 F.3d 649, 654–55 (7th Cir. 2003) ("*TrafFix* rejected an equation of functionality with necessity; it is enough that the design be useful."); see also *Eppendorf-Netheler-Hinz*, 289 F.3d at 356 (recognizing that *TrafFix Devices* superseded Fifth Circuit's reliance on an earlier test "virtually identical to the 'competitive necessity' test"). We consider both definitions in evaluating this case.

We applied the broader definition of functionality — affecting the cost or quality of a product — in *Specialized Seat-*

*ing, Inc. v. Greenwich Industries, LP*, 616 F.3d 722 (7th Cir. 2010). That decision held squarely that a design feature need not function optimally to be functional and thus not protectable as trade dress. One party claimed trade dress protections in an "x-frame" style folding chair. *Id.* at 723–24. It argued that its design was not functional, pointing to other designs that were "stronger, or thinner, or less likely to collapse … or lighter." *Id.* at 727. (Irony is often a feature of litigation over functionality, as the party seeking trade dress protection criticizes its own product's features. That happened in this case as well.) We rejected that argument, reasoning that a design need not be "the only way to do things" to be functional; it need only "represent[] one of many solutions to a problem." *Id.*; see also *Georgia-Pacific Consumer Products LP v. Kimberly-Clark Corp.*, 647 F.3d 723, 731 (7th Cir. 2011) (applying *Specialized Seating*'s reasoning to quilting design on toilet paper, and noting ironic conflict between plaintiff's own advertising touting advantages of the design and its litigation position denying such practical benefits). The chair design in *Specialized Seating* amounted to a "compromise[]" along several functional "axes," a "selection of attributes" on functional dimensions. 616 F.3d at 727. Such design features are functional even if other solutions to the design problems are available to competitors. *Id.*

B. *Functionality Doctrine Applied Here*

Functionality is a factual question, *Specialized Seating*, 616 F.3d at 726, but the bar for functionality is so low that it can often be decided as a matter of law, as in this case. See *Georgia-Pacific*, 647 F.3d at 727; *Jay Franco & Sons, Inc. v. Franek*, 615 F.3d 855, 856–57 (7th Cir. 2010).

Plaintiff identifies five elements in its claimed trade dress: (1) the bag's cuboidal shape; (2) the bag's softness; (3) the zipper's location on the bag; (4) the "folded and tucked" corners; and (5) the seam halfway up the bag's sides. Those elements determine the bag's shape, its degree of rigidity, and how hard or easy it is to access its contents — all, the undisputed evidence shows, functional aspects of the product. Plaintiff submitted a declaration from its founder, who explained that whether these bags are soft or rigid affects how susceptible they are to puncture and deformation. She discussed how the bags' shapes influence their cost, how easy their contents are to access, and what handbags they fit into. Plaintiff emphasizes that customers care about those features for reasons other than source identification: the features "affect[] the … quality of the article." *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 851 n.10 (1982). That is the very definition of a functional feature.

Plaintiff argues that those facts are not fatal to its case. It points to evidence that the bag's features were chosen for their aesthetic appeal rather than for their functional qualities. As in *Specialized Seating*, this is "not a complete answer, as attractiveness is a *kind* of function," but as in that case, we need not pursue the point. See 616 F.3d at 725 (citation omitted). Its bag, plaintiff says, is in fact inferior to competing options: metal tins are cheaper and less easily damaged, for example, and other shapes make accessing the bag's contents easier. That is just the sort of argument we rejected in *Specialized Seating*. We reject it again here. These different design features present alternative functional designs with different advantages and disadvantages that have nothing to do with the source of a particular product. Alternative designs can be "part of the total evidentiary matrix to be weighed" in decid-

ing whether claimed trade dress is functional. J. Thomas McCarthy, 1 *McCarthy on Trademarks and Unfair Competition* § 7:75 (4th ed. 2008); see *Georgia-Pacific*, 647 F.3d at 727–28 (listing availability of alternative designs among factors considered to decide functionality).

The question is not, as plaintiff would have it, whether the claimed trade dress has "less utility" than alternatives. Focusing on that question would be contrary to our precedent and sound interpretation of the Lanham Act, offering unlimited monopolies for useful design features. It would also encourage peculiar arguments by trade-dress plaintiffs criticizing their own products, as plaintiff did in this case. Under *TrafFix Devices*, *Specialized Seating*, and *Georgia-Pacific*, the right question is whether the design feature affects product quality or cost or is "merely ornamental." *McAirlaids, Inc. v. Kimberly-Clark Corp.*, 756 F.3d 307, 312 (4th Cir. 2014). Here, the undisputed evidence shows that the claimed design features affect product quality, so we need not consider the availability of alternative designs for competitors. See *TrafFix Devices*, 532 U.S. at 33 ("Functionality having been established … [t]here is no need … to engage … in speculation about other design possibilities.").

The district court's judgment is AFFIRMED.

# APPENDIX A



# APPENDIX B



Plaintiff's bag (left); Urban Aid's bag (right)