In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 18-3020

BODUM USA, INCORPORATED,

*Plaintiff-Appellee,*

*v.*

A TOP NEW CASTING INCORPORATED,

*Defendant-Appellant.*

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 16-cv-02916 — **Matthew F. Kennelly**, *Judge.*

_____

ARGUED MAY 30, 2019 — DECIDED JUNE 12, 2019

_____

Before FLAUM, MANION, and BARRETT, *Circuit Judges.*

FLAUM, *Circuit Judge.* Bodum USA, Inc. ("Bodum") produces and sells what design magazines and art museums have recognized as an iconically designed houseware product—the Chambord French press coffeemaker. Bodum sued A Top New Casting, Inc. ("A Top") for selling a French press that Bodum claimed infringes on its unregistered trade dress in the Chambord. After a five-day trial, a jury returned a ver-

dict in favor of Bodum, finding that A Top had willfully in-
fringed on Bodum's trade dress in the Chambord and award-
ing Bodum $2 million in damages. The district court denied
A Top's post-trial motion for judgment as a matter of law, in
which A Top argued that Bodum failed to prove the Cham-
bord design was nonfunctional. A Top also moved for a new
trial because the court excluded evidence of various utility pa-
tents covering French press coffeemakers; the district court
denied this motion as well. We affirm.

## I. Background

Plaintiff-appellee Bodum has been selling French press
coffeemakers since the 1970s. A French press is a nonelectric
coffeemaker consisting of a cylindrical carafe and a plunger
attached to a filter screen. The user adds boiling water to cof-
fee grounds in the carafe and, after the grounds have steeped,
presses the filter down slowly through the carafe to separate
the used grounds from the brewed coffee.

Bodum began distributing the Chambord, its flagship
French press, in 1983. The Chambord's design originated in
France in the 1930s and is based on the towers of the Cham-
bord Chateau, a castle in France's Loire Valley. Its features in-
clude a metal cage with a band around the top of the carafe,
metal pillars ending in four curved feet, a C-shaped handle,
and a domed lid topped with a spherical knob. Bodum's
Chambord French press is pictured below:



Bodum acquired exclusive rights to distribute the Chambord in 1991 and has spent millions of dollars promoting it in print and television advertisements and at trade shows worldwide. Bodum sells the Chambord in department stores, at Starbucks coffee shops, and online, including through Amazon. The Chambord design has been recognized as classic by such institutions as Phaidon Design Classics and the Museum of Modern Art. Bodum actively polices whatever it believes to be infringement of this design; it has sent dozens of cease-and-desist letters over the past twenty-five years and has filed lawsuits against alleged infringers when they did not stop selling their products in response to Bodum's requests.

In 2014, defendant-appellant A Top began selling a competing French press coffeemaker called the SterlingPro exclusively through Amazon. The SterlingPro is similar in appearance to the Chambord, with the same metal cage, metal pillars ending in curved feet, C-shaped handle, and domed lid

topped with a spherical knob. The two coffeemakers are pictured side-by-side below, with the Chambord on the left and the SterlingPro on the right:



Bodum filed a complaint against A Top in the Northern District of Illinois on March 7, 2016, bringing claims for trade dress infringement under the Lanham Act, 15 U.S.C. § 1125(a); common law unfair competition; and violation of the Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. § 510/1 *et seq.* According to Bodum's complaint, A Top intentionally adopted the overall appearance of the Chambord for its SterlingPro product, infringing on its unregistered trade dress in the design. A Top moved for summary judgment on Bodum's claims twice, but the district court denied these motions and the case proceeded to a jury trial on March 28, 2018.

The jury returned a verdict in Bodum's favor, finding that A Top willfully infringed on Bodum's Chambord trade dress and awarding Bodum $2 million in damages. A Top timely moved for judgment as a matter of law under Federal Rule of

Civil Procedure 50 and for a new trial under Rule 59. As relevant here, A Top claimed that it was entitled to judgment as a matter of law because Bodum had failed to prove its Chambord trade dress elements were nonfunctional. And A Top said it was at least entitled to a new trial because the district court erred in excluding evidence under Rule 403 of utility patents that, it said, disclosed the Chambord's trade dress features (demonstrating the functionality of those features). The district court denied both motions on June 6, 2018.

On August 21, 2018, the district court granted Bodum's motion for enhanced damages, awarding prejudgment interest and doubling the damages award to $4 million, and it denied Bodum's motion for attorney's fees. Further, the court granted Bodum's request for a permanent injunction to prevent A Top from continuing to sell its infringing SterlingPro products. The district court entered final judgment on August 23, and A Top timely appealed.

## II. Discussion

A Top pursues two arguments on appeal. First, A Top says that it is entitled to judgment as a matter of law because Bodum did not meet its burden of demonstrating that the elements of the claimed Chambord trade dress were nonfunctional (as required for it to be enforceable under the Lanham Act). Second, A Top claims that it is entitled to a new trial because the district court improperly excluded several utility patents from evidence under Rule 403.

### A. Functionality of the Chambord Trade Dress

We review de novo the denial of a Rule 50 motion for judgment as a matter of law. *Thorne v. Member Select Ins. Co.*, 882 F.3d 642, 644 (7th Cir. 2018). "Because a jury has rendered a

verdict, we view the evidence in the light most favorable to that verdict." *Matthews v. Wis. Energy Corp.*, 642 F.3d 565, 567 (7th Cir. 2011). In our review, we do not make credibility determinations or reweigh the evidence; we need only determine that there is more than "a mere scintilla of evidence" to support the verdict. *May v. Chrysler Grp., LLC*, 716 F.3d 963, 971 (7th Cir. 2013) (quoting *Hossack v. Floor Covering Assoc. of Joliet, Inc.*, 492 F.3d 853, 859 (7th Cir. 2007)). "In other words, our job is to decide whether a highly charitable assessment of the evidence supports the jury's verdict or if, instead, the jury was irrational to reach its conclusion." *Id.*

The Lanham Act permits a civil action against any person who uses "any word, term, name, symbol, or device" "in connection with any goods or services" in a manner which "is likely to cause confusion" as to the source of those goods or services. 15 U.S.C. § 1125(a)(1)(A). The Act's protection extends to a product's trade dress, which includes a product design that is so distinctive it identifies the product's source. *Arlington Specialties, Inc. v. Urban Aid, Inc.*, 847 F.3d 415, 418 (7th Cir. 2017); *see also TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 28 (2001) ("The design or packaging of a product may acquire a distinctiveness which serves to identify the product with its manufacturer or source; and a design or package which acquires this secondary meaning … is a trade dress[.]"). As with any other trademark, infringement of a product's trade dress is actionable under the Act. *Arlington Specialties*, 847 F.3d at 418.

At trial, Bodum was required to prove a number of elements for the jury to find trade dress infringement—that it owns a valid trade dress in the Chambord design, that the trade dress is not functional, and that A Top's SterlingPro was

likely to cause consumer confusion as to its source. *See id.* On appeal, A Top does not dispute that the SterlingPro copies the Chambord. Instead, A Top only challenges Bodum's proof on the functionality of its claimed trade dress.[1]

Trademark protection for trade dress, unlike patent and copyright protection, has no time limit; the Act therefore does not protect features that are necessary for the use of a product, so as to prevent one competitor from maintaining a "perpetual and exclusive right to a useful product feature." *Id.* (citing *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 165 (1995)). The Supreme Court has explained that "'a product feature is functional,' and cannot serve as a trademark, 'if it is essential to the use or purpose of the article or if it affects the cost or quality of the article.'" *Qualitex*, 514 U.S. at 165 (quoting *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 850 n.10 (1982)). Even if a claimed trade dress does not satisfy this first test, "it can still be functional if it is a 'competitive necessity,' that is, if its exclusive use 'would put competitors at a significant non-reputation-related disadvantage.'" *Arlington Specialties*, 847 F.3d at 419 (quoting *TrafFix Devices*, 532 U.S. at 32–33)); *see also Specialized Seating, Inc. v. Greenwich Indus., LP*, 616 F.3d 722, 727 (7th Cir. 2010) (a design is functional where a product "looks the way it does in order to be a better [product], not in order to be a better way of identifying who made it"). Where, as here, the claimed trade dress is unregistered, it is the burden

---

[1] In fact, at oral argument, A Top confirmed that it was not arguing that the SterlingPro did not copy the Chambord, but it instead argued that it "had a right to copy, right down to the last bolt," because Bodum did not have a valid trade dress in the Chambord.

of the party asserting protection to prove that the trade dress is not functional. 15 U.S.C. § 1125(a)(3).

In deciding whether a trade dress element is functional, we consider several factors:

> (1) the existence of a utility patent, expired or unexpired, that involves or describes the functionality of an item's design element; (2) the utilitarian properties of the item's unpatented design elements; (3) advertising of the item that touts the utilitarian advantages of the item's design elements; (4) the dearth of, or difficulty in creating, alternative designs for the item's purpose; (5) the effect of the design feature on an item's quality or cost.

*Ga.–Pac. Consumer Prods. LP v. Kimberly–Clark Corp.*, 647 F.3d 723, 727–28 (7th Cir. 2011) (citation omitted). No one factor is dispositive. *See id.* at 728–31 (considering each factor separately to determine whether it weighs in favor of or against functionality); *Valu Eng'g, Inc. v. Rexnord Corp.*, 278 F.3d 1268, 1274–75 (Fed. Cir. 2002).

Bodum claims trade dress protection in the overall appearance of the Chambord and identifies the following specific elements as contributing to that distinctive look: the metal band surrounding the carafe that forms support feet and the handle attachment, the domed lid, the rounded knob atop the plunger, and the C-shaped handle. *See Comput. Care v. Serv. Sys. Enters., Inc.*, 982 F.2d 1063, 1071 (7th Cir. 1992) (where plaintiff seeks to protect overall appearance of its trade dress, focus of analysis is on that total appearance rather than individual design elements in isolation). Bodum does

not claim a trade dress in the cylindrical carafe or the plunger, as it acknowledges those elements are functional for a French press coffeemaker.

A Top argues Bodum failed to establish that the claimed Chambord features are not essential to its use and that these features do not affect the coffeemaker's cost or quality. However, in its argument, A Top consistently elides the distinction between a product's "function" in the everyday meaning of the term and "functional" as a term of art used in trade dress law. Bodum does not claim that any French press coffeemaker with a handle, a domed top, or metal around the carafe infringes on its trade dress. Rather, it is the overall appearance of A Top's SterlingPro, which has the *same* shaped handle, the *same* domed lid, the *same* shaped feet, the *same* rounded knob, and the *same* shaped metal frame as the Chambord, that Bodum objects to. Thus, to establish it has a valid trade dress, Bodum did not have to prove that something like a handle does not serve any function. It merely needed to prove that preventing competitors from copying the Chambord's particular design would not significantly disadvantage them from producing a competitive and cost-efficient French press coffeemaker. *See Arlington Specialties*, 847 F.3d at 419.

When properly framed in this manner, Bodum presented sufficient evidence for a reasonable jury to conclude that the Chambord's overall look was nonfunctional. First, regarding the utilitarian properties of the Chambord's design elements, *see Ga.–Pac. Consumer Prods.*, 647 F.3d at 728, Bodum's functionality expert Robert Anders testified about their *non*utilitarian nature. He testified that the only functional parts of the Chambord—the parts that are necessary to make French press coffee—are the plunger and cylindrical shape of the carafe. In

contrast, Mr. Anders did not believe the particular C-shape of the Chambord's handle worked better than an alternatively shaped handle and, in fact, testified that he thought the C-shape was "not as ergonomically designed as it could be." Mr. Anders further testified that the dome-shaped lid was an "arbitrary design" because the lid "could be of any shape" in order to work, and the metal frame is "absolutely not" necessary for the Chambord to make French press coffee.

A Top's expert, Peter Bressler, agreed. He "didn't see particularly great advantage in the design of the handle, but [he] saw an advantage in having a handle." Whether it is more advantageous for a French press to have *a handle*, however, is not the pertinent inquiry; the question is whether there is an advantage to having *this designed handle*, to which Mr. Bressler agreed there is not. The same is true of the feet: Mr. Bressler testified he "didn't see a particular advantage in the design of the feet, but [ ] saw the fact that it had feet, which, to [him], was a utilitarian advantage." Again, this does not speak to any advantages of the *design* of the feet. Overall, Mr. Bressler testified that "[t]he utilitarian advantages … are not that clear." This evidence weighs in favor of nonfunctionality because it supports that the claimed Chambord features are "merely ornamental" and are not necessary to make the Chambord work better as a French press coffeemaker. *Arlington Specialties*, 847 F.3d at 420 (citation omitted).[2]

---

[2] A Top points to two changes Bodum made to the Chambord in response to safety issues the United States Consumer Product Safety Commission raised—reducing the size of the knob and redesigning the lid to fit deeper into the carafe—as evidence the knob and lid are functional. However, Bodum could have reduced the size of the knob and made it a flat disk or redesigned the deep-fitting lid to be flat instead of domed

Next, A Top argues that Bodum admitted the Chambord design was functional in its advertising and thus failed to meet its burden of proving nonfunctionality. *See Ga.–Pac. Consumer Prods.*, 647 F.3d at 730 (advertising that touts the design's "utilitarian advantages" can weigh in favor of functionality). Indeed, Joergen Bodum, CEO of Bodum's parent company, testified regarding Chambord advertisements describing the product as "functional" and about an interview he gave in which he described Bodum's products as "function-driven." However, he also explained that these references to functionality were not invoking the term's legal definition but were merely intended to convey that Bodum's products work. In fact, Bodum's advertising for the Chambord never claimed any of its design features worked better than other options— for example, it never claimed the handle is an ergonomic shape nor that its four curved feet provide stability. Rather, the advertising focused on the classic look of the Chambord design. Thus, a reasonable jury could weigh this evidence against a finding of functionality in the legal trade dress sense.

Additionally, Bodum introduced a plethora of evidence regarding the availability of alternative designs, which supported the Chambord's lack of functionality. *Id.* It introduced as trial exhibits competing manufacturers' French presses featuring different design elements, including those made of different materials, with differently shaped handles, lids, plunger knobs, and frames, those that do not have transparent carafes or do not have feet, and those with differently

---

while still remedying these safety concerns. There is no evidence that the appearance of the features as redesigned are necessary for a competitive product, from a use (or cost) perspective.

shaped external structures surrounding the cylindrical carafe. *See* Appellee Br. at 4 (pictures of alternatively designed French presses introduced as trial exhibits). More importantly, Bodum introduced evidence that both it and A Top sell French presses with alternative designs and made of different materials. Thus, there was ample evidence before the jury in Bodum's favor on this factor.

Finally, we must consider the cost or quality advantage test of functionality. *See TrafFix Devices*, 532 U.S. at 32; *see also Ga.–Pac. Consumer Prods.*, 647 F.3d at 731. Again, Bodum presented sufficient evidence from which a jury could conclude that the Chambord's design conferred no cost or quality advantage that made it functional. Bodum's expert, Mr. Anders, testified the Chambord design was "complex" and that there are "simpler ways of doing this." He explained the more complex the structure, the more expensive the product is to manufacture, so he disagreed with A Top's expert that the Chambord was the least expensive method to manufacture a French press. Mr. Anders also explained that plastic is generally cheaper to use than metal in manufacturing, so plastic-framed French presses would be cheaper to manufacture than the metal-framed Chambord.

Joergen Bodum further supported Mr. Anders's opinion in his testimony regarding the many different French presses Bodum produces. For example, Bodum's "Bistro" French press does not have a metal frame, a domed lid, or a C-shaped handle. Mr. Bodum testified that the Bistro is less expensive to produce ("maybe less than half of what it costs to make a Chambord") and less time-consuming to produce because it requires less material than the Chambord. Although the Bistro was a successful first product for the company, Mr.

Bodum testified he decided to produce the Chambord, a more complex and expensive product, in addition to the Bistro because he was interested in its iconic French design. Mr. Bodum also discussed the manufacturing costs to produce Bodum's various French press coffeemakers. He explained that the Chambord is neither the cheapest nor the most expensive French press Bodum sells.[3] Thus, Mr. Bodum's testimony supported that the Chambord's overall design conferred no particular cost advantage that made it functional.[4]

---

[3] A Top repeatedly states in its brief that Mr. Bodum testified the Chambord provides a cost advantage. The trial testimony A Top cites for the proposition, however, does not support this assertion. Though Mr. Bodum did answer affirmatively that the Chambord design "gives a cost advantage in manufacturing over other types of French presses," it is abundantly clear from the surrounding answers that Mr. Bodum misspoke in answering this question. Immediately before this answer, Mr. Bodum explained that the Chambord is "one of the most expensive" coffeemakers to manufacture, and immediately after, Mr. Bodum confirmed that the Chambord's design does not "result from the fact that it was so inexpensive to manufacture." A Top's efforts to take Mr. Bodum's misstatement as an admission are therefore unavailing.

[4] A Top relies on *Apple Inc. v. Samsung Electronics Co.*, 786 F.3d 983 (Fed. Cir. 2015), *rev'd and remanded on other grounds*, 137 S. Ct. 429 (2016), to argue that Bodum's evidence regarding the relative costs of the *materials* used to make the Chambord is irrelevant and, therefore, that Bodum introduced nothing to show the Chambord is nonfunctional under the cost advantage test. *Apple*, a Federal Circuit case applying Ninth Circuit law, is not controlling here, but in any event, it is distinguishable. In *Apple*, the plaintiff argued that its unregistered trade dress in its product did not result from a comparatively simple manufacturing process. *Id.* at 994. The Federal Circuit, however, noted that the difficulties plaintiff encountered in its manufacturing process resulted from its choice to use certain materials to improve the durability (*i.e.*, the function) of its product. *Id.* Thus, this evidence did not address any cost advantages or disadvantages of plaintiff's design. *Id.* Here, however, Bodum introduced evidence that

Indeed, Jian Liang, A Top's CEO, testified that A Top produces another French press with a plastic frame that is less expensive than the metal SterlingPro. This testimony further demonstrates that the Chambord's design does not provide a cost advantage. Contrary to A Top's argument, Bodum provided evidence sufficient for the jury to conclude that the Chambord's appearance is costlier to manufacture than to design around, which supports that the Chambord trade dress is not functional. *See Thomas & Betts Corp. v. Panduit Corp.*, 138 F.3d 277, 297–98 (7th Cir. 1998).

Overall, looking at the evidence in the light most favorable to the verdict, Bodum presented sufficient evidence for the jury to have found Bodum's claimed trade dress was nonfunctional. We cannot say the jury was irrational to reach this conclusion, so we affirm the denial of A Top's motion for judgment as a matter of law.

## B. Exclusion of Utility Patents Evidence

A Top also appeals a related issue—the district court's decision to exclude evidence of various utility patents, which A Top contends demonstrate the functionality of the claimed Chambord trade dress features. A district court may exclude relevant evidence where its probative value is substantially outweighed by, for example, a risk of unfair prejudice or confusing the issues. Fed. R. Evid. 403. We review evidentiary rulings for abuse of discretion and will reverse "only if no reasonable person would agree with the district court's view."

---

French presses can still function when made out of other materials, like plastic, and that the metal and glass used for the Chambord design do not confer any particular cost or quality advantage for the product.

*United States v. Proano*, 912 F.3d 431, 438 (7th Cir. 2019). Furthermore, we accord Rule 403 determinations "'special deference,' because only 'in an extreme case are appellate judges competent to second-guess the judgment of the person on the spot, the trial judge.'" *Id.* at 440 (quoting *United States v. Jackson*, 898 F.3d 760, 764 (7th Cir. 2018)).

As noted above, courts consider "the existence of a utility patent, expired or unexpired, that involves or describes the functionality of an item's design element" in considering whether a claimed trade dress is functional. *Ga.–Pac. Consumer Prods.*, 647 F.3d at 727–28.[5] As the Supreme Court has explained, a utility patent is "strong evidence that the features therein claimed are functional." *TrafFix Devices*, 532 U.S. at 29. In other words, "if the 'central advance' claimed in the utility patent matches the 'essential feature' of the trademark, there is strong evidence that the design is functional." *Ga.–Pac. Consumer Prods.*, 647 F.3d at 728 (quoting *TrafFix Devices*, 532 U.S. at 30).

Evidence of utility patents came up during Mr. Anders's examination. On direct examination, Bodum asked Mr. Anders a total of seven questions about utility patents and showed him one patent that A Top's expert had cited in his report. Mr. Anders testified that, though a utility patent claiming a feature is evidence that this feature is functional in the trade dress sense, he did not find any utility patents covering the Chambord trade dress features. He believed the pa-

---

[5] A utility patent covers "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101.

tent A Top's expert cited only disclosed the plunger rod engaging with the cylindrical walls of the carafe, which Mr. Anders explained is a feature in all French presses and has no bearing on the Chambord trade dress.

On cross examination, A Top asked Mr. Anders many additional questions about patents and showed him approximately ten utility patents. A Top questioned Mr. Anders about whether the patents disclosed the same elements Bodum claims as part of the Chambord trade dress—a domed lid, a handle, and a circular knob atop the plunger. However, counsel only provided Mr. Anders with the pictures from the patents, not the portion of the patents explaining the claims. Mr. Anders testified that he believed utility patents describe the claims in words, not in the illustrations, so he would not agree the patents disclosed any elements of the Chambord trade dress based solely on a review of the pictures.

Bodum's counsel objected to the admission of the patents as evidence. The court provisionally admitted the patents for Bodum's redirect examination of Mr. Anders and then heard arguments on the objection at the next break in the trial. Bodum argued the patents A Top sought to have admitted were irrelevant because they were not patents for any Bodum or A Top product and were not patents of identical designs. Bodum also argued the proposed exhibits were incomplete as they were only a portion of the patents. The district court requested briefing on the issue of whether utility patents for similar but not identical products are relevant to the question of functionality and requested complete copies of each patent.

After reviewing the parties' arguments and the entire patents, the district court excluded them from evidence. The court explained it did not matter that the patents were for

other parties' products but it did matter whether the features Bodum claimed as part of its trade dress were disclosed in the patents. The court asked A Top to point to language in any of the patents it sought to admit that claimed as part of the patent "any of the features that [Bodum] says are part of its trade dress." A Top could not, however, find any such language. Though it continued to insist the patents described knobs and domed lids, it could not point to any language in the patents to support this contention. The patent A Top claimed "most illuminating" described: "The system of Claim 1 or the cover means comprising removable cover for the drinking vessel adapted to fit over the top of the vessel, having an opening through which the push rod extends the sliding movement relative to the cover."[6] But A Top was unable to point to a single patent that claimed a *domed* lid, a C-shaped handle, feet on the bottom of the carafe, or a metallic castle-shaped cage—the design elements Bodum claims as its trade dress.

The district court reviewed the jury instruction on whether a patent discloses the "practical advantages" of the design and explained that *TrafFix Devices* requires that the patent somewhere (not necessarily in the claims portion of the patent) claim the trade dress features in some "significant way." Here, none of the patents did so. Though some of the French presses in the patent pictures had a handle, feet, or something on top of the plunger, the court did not think that "bears on the question of whether it's functional as … trade dress law defines that term." The court elaborated:

---

[6] During argument on the objection, A Top described this as the Banks patent, 5,618,570, which does not appear to be in the record and is not mentioned in either party's appellate briefs.

> [T]here is a massive potential for jury confusion
> here if these things are used in the way, frankly,
> that they were used during the cross-examina-
> tion of the [ ] expert. You put a picture up there,
> that's got a handle, it's got a knob, it's got a
> plunger, it's cylindrical like yours, that's not
> what the inquiry is. The inquiry isn't whether
> somebody has drawn this picture before. The
> inquiry is whether … the features are claimed in
> a patent in a way that shows that they have
> some sort of a function.

The court then concluded: "I don't think it's relevant. If it's relevant, it has teeny teeny probative value, massive potential for jury confusion. It's excluded under Rule 403." The court did not permit A Top to use the patent evidence with its expert and gave the jury a curative instruction: "During the cross-examination of witness Robert Anders, he was shown certain pages from certain patents. I have excluded those patents from the evidence in this case. You are not to consider them for any purpose."

The district court did not abuse its discretion in excluding this evidence. The patents A Top sought to introduce do not claim any of the features that comprise the claimed Chambord trade dress. *See TrafFix Devices*, 532 U.S. at 29 (utility patents are evidence "that the features *therein claimed* are functional" (emphasis added)). That the patents disclose a plunger and cylindrical carafe are irrelevant because Bodum does not claim those elements as part of its trade dress. And the pictures in the patents showing French presses with handles, domed lids, or knobs are irrelevant to the legal question of functionality because the patents do not claim any of those

features as part of the patented invention. Permitting the jury to view and consider the patents would cause confusion as to the appropriate inquiry for functionality.

A Top also claims that whether a patent discloses a feature's utility is a question of fact for the jury and, as such, the district court erred in excluding the patents from the jury's consideration. In *Thomas & Betts*, we explained that a "utility patent must be examined in detail to determine whether or not the disclosed configuration is really primarily functional or just incidentally appears in the disclosure of a patent." 138 F.3d at 300 (quoting J. Thomas McCarthy, 1 McCarthy on Trademarks and Unfair Competition § 6:10 (4th ed. 1996)). There, the district court determined at summary judgment that because the claimed feature was part of a patent and did not appear incidentally, it was primarily a functional feature. *Id.* On appeal, we determined that this conclusion "necessitated a weighing of the evidence," so a jury should have had the opportunity to decide how much weight to give the patent considering all the other evidence presented on the functionality issue. *Id.* The district court's decision here is consistent with *Thomas & Betts*. The court excluded the evidence under Rule 403, an evidentiary rule that tasks the judge with balancing the exclusion of relevant evidence with the risk of harm from admission. The district court did not decide the functionality question; it determined that the patent evidence, while relevant to the question of functionality, posed too significant a risk of jury confusion (an issue not raised by the patent evidence in *Thomas & Betts*).

This is not one of those extreme cases in which we second-guess the trial judge's weighing of the probative value of the evidence with the potential for jury confusion on a Rule 403

issue. We affirm the court's denial of A Top's motion for a new trial.[7]

### III. Conclusion

For the foregoing reasons, we AFFIRM the judgment of the district court.

---

[7] In its opening brief, A Top cites to the standard of review for a motion for a new trial based on improper jury instructions. However, A Top does not develop an argument based on any problem with the court's instructions, and so we do not address this issue. *See Ienco v. Angarone*, 429 F.3d 680, 685 (7th Cir. 2005).