**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-3010
_____

EZAKI GLICO KABUSHIKI KAISHA,
a Japanese Corporation d/b/a Ezaki Glico;

EZAKI GLICO USA CORP.,
a California Corporation,

                                 Appellants

v.

LOTTE INTERNATIONAL AMERICA CORP.;
LOTTE CONFECTIONARY CO. LTD.
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-15-cv-05477)
District Judge: Honorable Madeline C. Arleo
_____

Argued: July 9, 2020

Before: McKEE, BIBAS, and FUENTES, *Circuit Judges*

(Filed: January 26, 2021)
_____

Jessica L. Ellsworth                    [ARGUED]
Anna K. Shaw
Neal K. Katyal
Benjamin A. Field
Hogan Lovells US
555 Thirteenth Street, N.W.
Columbia Square
Washington, DC 20004

Steven M. Levitan
Hogan Lovells US
4085 Campbell Avenue
Menlo Park, CA 94025

Aaron S. Oakley
Hogan Lovells US
1601 Wewatta Street
Denver, CO 80202

Katherine B. Wellington
Hogan Lovells US
125 High Street, Suite 2010
Boston, MA 02110

Roy H. Wepner
Lerner David Littenberg Krumholz & Mentlik
20 Commerce Drive
Cranford, NJ 07016

    *Counsel for Appellants*

John J. Dabney　　　　　　[ARGUED]
Mary D. Hallerman
Snell & Wilmer
2001 K Street, N.W.
Suite 425 North
Washington, DC 20006

　　*Counsel for Appellees*

David H. Bernstein
Debevoise & Plimpton
919 Third Avenue
New York, NY 10022

Bruce R. Ewing
Dorsey & Whitney
51 West 52nd Street
New York, NY 10019

Jonathan E. Moskin
Foley & Lardner
90 Park Avenue
New York, NY 10016

Claudia E. Ray
Kirkland & Ellis
601 Lexington Avenue
New York, NY 10022

　　*Counsel for Amicus Curiae in support of Appellants*
　　*International Trademark Association, on Petition for*
　　*Rehearing*

Theodore H. Davis, Jr.
Kilpatrick Townsend
1100 Peachtree Street, Suite 2800
Atlanta, GA 30309

Sara K. Stadler
Kilpatrick Townsend
1114 Avenue of the Americas
The Grace Building, 21st Floor
New York, NY 10036

> *Counsel for Amicus Curiae in support of Appellants*
> *National Confectioners Association, on Petition for*
> *Rehearing*

Adam H. Charnes
Kilpatrick Townsend
2001 Ross Avenue, Suite 4400
Dallas, TX 75201

Charles H. Hooker, III
Kilpatrick Townsend
1100 Peachtree Street, Suite 2800
Atlanta, GA 30309

J. David Mayberry
Kilpatrick Townsend
1114 Avenue of the Americas
The Grace Building, 21st Floor
New York, NY 10036

> *Counsel for Amicus Curiae in support of Appellants*
> *Mondelez Global LLC, on Petition for Rehearing*

————————————

OPINION OF THE COURT

————————————

BIBAS, *Circuit Judge*.

This is a tale of more than just desserts. Decades ago, Ezaki Glico invented Pocky, a chocolate-covered cookie stick. Pocky was very popular. And its success drew imitators, including Lotte's Pepero. Ezaki Glico now sues Lotte for trade-dress infringement.

The District Court granted Lotte summary judgment, finding that because Pocky's design is functional, Ezaki Glico has no trade-dress protection. We agree. Trade dress is limited to designs that identify a product's source. It does not safeguard designs that are functional—that is, useful. Patent law protects useful inventions, but trademark law does not. We will thus affirm.

## I. BACKGROUND

### A. A cookie is born: Ezaki Glico's Pocky

Ezaki Glico is a Japanese confectionery company. For more than half a century, it has made and sold Pocky: a product line of thin, stick-shaped cookies (what the British call biscuits). These cookies are partly coated with chocolate or a flavored cream; some have crushed almonds too. The end of each is left partly uncoated to serve as a handle. Ezaki Glico makes Pocky in both a standard and an "Ultra Slim" size. Appellant's Br. 9.

In 1978, Ezaki Glico started selling Pocky in the United States through its wholly owned subsidiary here. Since then, it has tried to fend off competitors by registering U.S. trademarks and patents. It has two Pocky product configurations registered as trade dresses.

Ezaki Glico also has a utility patent for a "Stick Shaped Snack and Method for Producing the Same." App. 1013–16. The first thirteen claims in the patent describe methods for making a stick-shaped snack. The final claim covers "[a] stick-shaped snack made by the method of claim 1." App. 1016. The width of that stick-shaped snack matches that of Pocky Ultra Slim.

## B. A new cookie comes to town: Lotte's Pepero

Imitation is the sincerest form of flattery, and others have noted Pocky's appeal. Starting in 1983, another confectionery company called Lotte started making Pepero. These snacks are also stick-shaped cookies (biscuits) partly coated in chocolate or a flavored cream, and some have crushed almonds too. It looks remarkably like Pocky. Here are the two products side by side:




*See* App. 980–83, 1018–19, 1021–24. Lotte and its U.S. subsidiary have been selling Pepero in the United States for more than three decades.

## C. Ezaki Glico's trade-dress suit

From 1993 to 1995, Ezaki Glico sent letters to Lotte, notifying Lotte of its registered trade dress and asking it to cease and desist selling Pepero in the United States. Lotte assured Ezaki Glico that it would stop until they resolved their dispute. But Lotte resumed selling Pepero. For the next two decades, Ezaki Glico took no further action.

In 2015, Ezaki Glico sued Lotte in federal court for selling Pepero. Under federal law, Ezaki Glico alleged trademark

infringement and unfair competition, in violation of the Lanham (Trademark) Act §§ 32 and 43(a), 15 U.S.C. §§ 1114, 1125(a)(1)(A). Under New Jersey law, it alleged trademark infringement and unfair competition, in violation of both the common law and the New Jersey Fair Trade Act, N.J.S.A. § 56:4-1 and 2.

After discovery, the District Court granted summary judgment for Lotte, holding that because Pocky's product configuration is functional, it is not protected as trade dress. *Kaisha v. Lotte Int'l Am. Corp.*, No. 15-5477, 2019 WL 8405592, at *3 (D.N.J. July 31, 2019).

Ezaki Glico now appeals. The District Court had jurisdiction under 15 U.S.C. §§ 1119 and 1121(a) and 28 U.S.C. §§ 1331, 1338, and 1367. We have jurisdiction under 28 U.S.C. § 1291.

We review the District Court's grant of summary judgment de novo. *Cranbury Brick Yard, LLC v. United States*, 943 F.3d 701, 708 (3d Cir. 2019). We will affirm if no material fact is genuinely disputed and if, viewing the facts most favorably to Ezaki Glico, Lotte merits judgment as a matter of law. Fed. R. Civ. P. 56(a). Both of Ezaki Glico's Lanham Act claims depend on the validity of its trade dress. New Jersey's unfair-competition and trademark laws are not significantly different from federal law, so our analysis of Ezaki Glico's Lanham Act claims applies equally to dispose of its state-law claims. *See Am. Greetings Corp. v. Dan-Dee Imports, Inc.*, 807 F.2d 1136, 1141 (3d Cir. 1986); 3 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 22:1.50 (5th ed. 2020). Following the parties' lead, we focus on federal trademark law.

8

## II. TRADE-DRESS LAW DOES NOT PROTECT PRODUCT DESIGNS THAT ARE USEFUL

Under the statute, the key issue is whether Pocky's trade dress is functional. Lotte says that it is; Ezaki Glico says no. Ezaki Glico equates "functional" with "essential." Appellants' Br. 18, 25 (emphases omitted). But that test is too narrow. It misreads the Lanham Act's text and its relationship with the Patent Act. Under both the statute and the case law, a feature's particular design is functional if it is useful. And there are several ways to show functionality.

### A. Patent law protects useful designs, while trademark law does not

Copying is usually legal. It is part of market competition. As a rule, unless a patent, copyright, or the like protects an item, competitors are free to copy it. *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 29 (2001).

The Constitution does authorize Congress to grant exclusive patents and copyrights "[t]o promote the Progress of Science and useful Arts," but only "for limited Times." U.S. Const. art. I, § 8, cl. 8. Utility patents promote "Science and useful Arts" by protecting inventions that are "new and useful." 35 U.S.C. § 101. Design patents protect "any new, original and ornamental design." *Id.* § 171(a). In keeping with the Constitution's time limit, utility patents last for twenty years, and design patents last for only fifteen years. *Id.* §§ 154(a)(2), 173. If there is no patent, or once a patent expires, competitors are free to copy "publicly known design and utilitarian ideas." *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 152

9

(1989); *accord Qualitex Co. v. Jacobson Prod. Co., Inc.*, 514 U.S. 159, 164 (1995). This way, sellers can compete and build on one another's innovations. That competition improves quality and lowers consumers' costs.

By contrast, trademark law protects not inventions or designs per se, but branding. A trademark is a "word, name, symbol, or device … used by a person[] … to identify and distinguish his or her goods … from those manufactured or sold by others and to indicate the source of the goods." 15 U.S.C. § 1127. Trademark law can protect a product's "trade dress[,] [which] is the overall look of a product or business." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 (3d Cir. 2014). That includes not only a product's packaging but also its design, such as its size, shape, and color. *Id.*; *Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 209 (2000).

We are careful to keep trademark law in its lane. Trade dress, like trademark law generally, is limited to protecting the owner's goodwill and preventing consumers from being confused about the source of a product. *Shire US Inc. v. Barr Labs., Inc.*, 329 F.3d 348, 353 (3d Cir. 2003). We must not overextend it to protect all of a product's features, because "product design almost invariably serves purposes other than source identification." *TrafFix*, 532 U.S. at 29 (quoting *Wal-Mart*, 529 U.S. at 213). "Trade dress protection … is not intended to create patent-like rights in innovative aspects of product design." *Shire*, 329 F.3d at 353. If it did, it could override restrictions on what is patentable and for how long. *Qualitex*, 514 U.S. at 164–65. After all, trademarks have no time limit.

10

The functionality doctrine keeps trademarks from usurping the place of patents. The Patent and Trademark Office cannot register any mark that "comprises any matter that, as a whole, is functional." 15 U.S.C. § 1052(e)(5). Even after a mark is registered, it is a defense to infringement "[t]hat the mark is functional." *Id.* § 1115(b)(8); *see also id.* § 1125(a)(3) (providing that the holder of an unregistered mark must prove that the mark "is not functional"). Thus, even if copying would confuse consumers about a product's source, competitors may copy unpatented functional designs.

## B. Functional designs need not be essential, just useful

The core dispute here is how to define "functional." Ezaki Glico reads it narrowly, equating it with "essential." Appellant's Br. 18, 25. But that is not what the word means.

Since the Lanham Act does not define functionality, we start with its ordinary meaning. A feature's design is functional if it is "designed or developed chiefly from the point of view of use: UTILITARIAN." *Functional* (def. 2a), *Webster's Third New International Dictionary* (1966). So something is functional as long as it is "practical, utilitarian"—in a word, useful. *Functional* (def. 2d), *Oxford English Dictionary* (2d ed. 1989). The word requires nothing more.

Reading functionality as usefulness explains how the Lanham Act fits with the Patent Act. Utility patents, not trademarks, protect inventions or designs that are "new and useful." 35 U.S.C. § 101. If the Lanham Act protected designs that were useful but not essential, as Ezaki Glico claims, it would invade

11

the Patent Act's domain. Because the Lanham Act excludes useful designs, the two statutes rule different realms.

Precedent also supports defining functional as useful. In *Qualitex*, the Supreme Court described the functionality doctrine as protecting competition by keeping a producer from perpetually "control[ling] a useful product feature." 514 U.S. at 164. In *TrafFix*, the Court described functionality as depending on whether "the feature in question is shown as a useful part of the invention." 532 U.S. at 34. It contrasted functional features disclosed in a utility patent with "arbitrary, incidental, or ornamental aspects" that "do not serve a purpose within the terms of the utility patent." *Id.* And in *Wal-Mart*, the Court contrasted designs that only "identify the source" with those that "render the product itself more useful or more appealing." 529 U.S. at 213. "[M]ore useful or more appealing" is a far cry from essential.

Conversely, a design is not functional if all it does is identify its maker. "Proof of nonfunctionality generally requires a showing that the element of the product serves no purpose other than identification." *Keene Corp. v. Paraflex Indus., Inc.*, 653 F.2d 822, 826 (3d Cir. 1981) (quoting *SK&F, Co. v. Premo Pharm. Labs., Inc.*, 625 F.2d 1055, 1063 (3d Cir. 1980)). But if a design gives a product an edge in usefulness, then it is functional.

Ezaki Glico resists this reading by focusing on one phrase from *Qualitex*. The heart of its claim is the first sentence of its argument: "A product's configuration is functional for purposes of trade dress protection only 'if it is *essential* to the use or purpose of the article or if it affects the cost or quality of the

article.'" Appellants' Br. 22 (quoting *Qualitex*, 514 U.S. at 165, and adding the emphasis). But the word "only" is nowhere on the page it cites. Though Ezaki Glico's forceful brief repeats "essential" more than four dozen times and structures its case around that touchstone, the authority does not support its drumbeat.

On the contrary, the Supreme Court recognizes several ways to show that a product feature is functional. One way is indeed to show that a feature "is essential to the use or purpose of the article." *Qualitex*, 514 U.S. at 165 (quoting *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 850 n.10 (1995)). Another is if "it affects the cost or quality of the article." *Id.* (Ezaki Glico keeps skipping over this part of the test.) At least in some cases, a feature is functional and unprotected if the "exclusive use of [the feature] would put competitors at a significant non-reputation-related disadvantage." *TrafFix*, 532 U.S. at 32 (quoting *Qualitex*, 514 U.S. at 165). All of these are different ways of showing usefulness. (Though this last inquiry is especially apt for proving aesthetic functionality, the Court has not specifically limited it to that context. *See TrafFix*, 532 U.S. at 33.) On the other hand, a feature is "not functional" if, for instance, "it is merely an ornamental, incidental, or arbitrary aspect of the device." *Id.* at 30.

We analyze functionality not at the level of the entire product or type of feature, but at the level of the particular design chosen for feature(s). Just "because an *article* is useful for some purpose," it does not follow that "all *design features* of that article must be 'functional.'" 1 McCarthy §7:70 (emphases added). The question is not whether the product or feature

13

is useful, but whether "the particular shape and form" chosen for that feature is. *Id.*

For instance, though ironing-board pads need "to use *some* color … to avoid noticeable stains," there is no functional reason to use green-gold in particular. *Qualitex*, 514 U.S. at 166. Though French press coffeemakers need *some* handle, there is no functional reason to design the particular handle in the shape of a "C." *Bodum USA, Inc. v. A Top New Casting Inc.*, 927 F.3d 486, 492–93 (7th Cir. 2019) (also noting that the design sacrificed ergonomics). And though armchairs need *some* armrest, there is no functional reason to design the particular armrest as a trapezoid. *Blumenthal Distrib., Inc. v. Herman Miller, Inc.*, 963 F.3d 859, 867–68 (9th Cir. 2020) (also noting that the design sacrificed comfort). Ironing-board colors, coffee-pot handles, and armrests are all generally useful. But the particular designs chosen in those cases offered no edge in usefulness.

Also, a combination of functional and non-functional features can be protected as trade dress, so long as the non-functional features help make the overall design distinctive and identify its source. *See Am. Greetings*, 807 F.2d at 1143.

But a product's design, including its shape, is often useful and thus functional. For example, when Nabisco sued Kellogg for making its shredded wheat pillow-shaped, just like Nabisco's, the Supreme Court rejected the unfair-competition claim. The pillow shape is functional because using another shape would increase shredded wheat's cost and lower its quality. *Kellogg Co. v. Nat'l Biscuit Co.*, 305 U.S. 111, 122 (1938). For the same reason, the Court rejected a challenge to copying the exact shape of a pole lamp. *Sears, Roebuck & Co. v. Stiffel*

14

*Co.*, 376 U.S. 225, 231–32 (1964). And if an inventor created a new light-bulb shape that improved illumination, he could not trademark that shape. *Qualitex*, 514 U.S. at 165. That would be true even if consumers associated the bulb shape with its inventor, because trademarking it would "frustrat[e] competitors' legitimate efforts to produce an equivalent illumination-enhancing bulb." *Id.* So long as the design improves cost, quality, or the like, it cannot be protected as trade dress. The shape need only be useful, not essential. Conversely, a distinctive logo, pattern, or other arbitrary shape or style may be nonfunctional and protectable as a trade dress.

As the leading trademark treatise concurs, "functional" means useful. "To boil it down to a phrase: something is 'functional' if it works better in this shape." 1 McCarthy § 7:63. That includes features that make a product cheaper or easier to make or use. *Id.* Because the functionality bar is supposed to keep "trade dress from creating 'back-door patents,' … . the test of what is 'functional' should be very similar to that of patent law." *Id.* § 7:67.

### C. Evidence of functionality

There are several ways to prove functionality. First, evidence can directly show that a feature or design makes a product work better. *See Am. Greetings*, 807 F.2d at 1142 (treating as functional "tummy graphics" on teddy bears because they signal each bear's personality). Second, it is "strong evidence" of functionality that a product's marketer touts a feature's usefulness. *Id.* at 1142–43. Third, "[a] utility patent is strong evidence that the features therein claimed are functional." *TrafFix*, 532 U.S. at 29. Fourth, if there are only a few ways to

15

design a product, the design is functional. *Keene*, 653 F.2d at 827. But the converse is not necessarily true: the existence of other workable designs is relevant evidence but not independently enough to make a design non-functional. *Id.*; 1 McCarthy §7:75 (interpreting *TrafFix*, 532 U.S. at 33–34).

Our list is not exhaustive; there may be other considerations. The Federal Circuit and other sister circuits also use similar inquiries. *See, e.g.*, *Georgia-Pac. Consumer Prods. LP v. Kimberly-Clark Corp.*, 647 F.3d 723, 727–28 (7th Cir. 2011); *Disc Golf Ass'n, Inc. v. Champion Discs, Inc.*, 158 F.3d 1002, 1006 (9th Cir. 1998); *In re Morton-Norwich Prods., Inc.*, 671 F.2d 1332, 1340–41 (C.C.P.A. 1982) (predecessor to the Federal Circuit).

With these definitions and inquiries in mind, we can now apply them to this case.

### III. POCKY'S TRADE DRESS IS FUNCTIONAL

To decide whether a trade dress is functional, we look at the usefulness of the exact feature or set of features claimed by the trade dress. *See Am. Greetings*, 807 F.2d at 1141. Ezaki Glico has two registered Pocky trade dresses, both broad. The first "comprises an elongated rod comprising biscuit or the like, partially covered with chocolate." App 10, 1448. The second consists of the same sort of snack, along with almonds on top of the chocolate or cream.

In a picture, Ezaki Glico's trade dresses include all cookies like these:



App. 292. The trade dresses are presumptively valid because they are registered and incontestable. *See* 15 U.S.C. § 1115. So Lotte bears the burden of proving that they are functional. *Id.* §§ 1115(a), (b)(8).

Ezaki Glico argues that none of these features is essential to make the snack easy to eat. But that is the wrong test. Lotte has shown that Pocky's design is useful and thus functional.

### A. Pocky's design makes it work better as a snack

Every feature of Pocky's registration relates to the practical functions of holding, eating, sharing, or packing the snack. Consider each stick's uncoated handle. Ezaki Glico's internal documents show that it wanted to make a snack that people could eat without getting chocolate on their hands. Pocky was born when Ezaki Glico found that it could coat just part of a

cookie stick, leaving people an uncoated place to hold it. So it designed Pocky's handle to be useful.

The same is true of Pocky's stick shape. As Ezaki Glico recognizes, the stick shape makes it "easy to hold, so it c[an] be shared with others to enjoy as a snack." App. 595. It also lets people eat the cookie without having to open their mouths wide. And the thin, compact shape lets Ezaki Glico pack many sticks in each box, enough to share with friends.

Viewed as a whole, Pocky's trade dress is functional. The claimed features are not arbitrary or ornamental flourishes that serve only to identify Ezaki Glico as the source. The design makes Pocky more useful as a snack, and its advantages make Pocky more appealing to consumers for reasons well beyond reputation. *See Kellogg*, 305 U.S. at 120. As Ezaki Glico's own documents acknowledge, "Pocky provides a functional value [Enjoy chocolate lightly]." App. 636 (bracketed material in original).

## B. Ezaki Glico promotes Pocky's utilitarian advantages

There is plenty of evidence that Ezaki Glico promotes Pocky's "convenient design." App. 646. Its ads tout all the useful features described above. It advertises "the no mess handle of the Pocky stick," which "mak[es] it easier for multi-tasking without getting chocolate on your hands." App. 648, 651. It also describes Pocky as "[p]ortable," since "one compact, easy-to-carry package holds plentiful amounts of Pocky." App. 648. "With plenty of sticks in each package, Pocky lends itself

to sharing anytime, anywhere, and with anyone." App. 655. These promotions confirm that Pocky's design is functional.

### C. There are alternative designs, but that does not make Pocky's design non-functional

Lotte could have shaped its Pepero differently. Ezaki Glico offers nine examples of partly-chocolate-coated snacks that do not look like Pocky. That is hardly dispositive. As we noted in *Keene*, even when there are alternatives, the evidence can still show that a product design is functional. 653 F.3d at 827. That is true here. Every aspect of Pocky is useful. The nine other designs do not make it less so.

### D. Ezaki Glico's utility patent for a manufacturing method is irrelevant

Finally, Lotte argues that Ezaki Glico's utility patent for a "Stick Shaped Snack and Method for Producing the Same" proves functionality. It does not.

As *TrafFix* explained, "[a] utility patent is strong evidence that the features therein claimed are functional." 532 U.S. at 29. This is because patented items must be "useful." 35 U.S.C. § 101. If a patentee relied on a product's feature to show that the product was patentable, that reliance is good evidence that the feature is useful. As *TrafFix* put it, the question is whether the "central advance" of the utility patent is also "the essential feature of the trade dress" that the owners want to protect. 532 U.S. at 30. So Ezaki Glico's utility patent would be strong evidence of functionality if the features it claimed overlapped with its trade dress. But they do not.

19

The trade dress that Ezaki Glico defends is a stick-shaped snack that is partly coated with chocolate or cream. Yet those features are not the "central advance" of its utility patent. Instead, the patent's innovation is a better method for *making* the snack's stick shape. The method is useful for making the shape whether or not the shape *itself* is useful for anything. Thus, the patent's mention of the shape says nothing about whether the shape is functional.

The District Court erroneously considered the utility patent. But that error was immaterial. Even setting that aside, many other factors show that Pocky's trade dress is functional and so not protectable. Thus, the District Court properly granted summary judgment for Lotte. We need not reach other possible grounds for affirmance.

* * * * *

Though Ezaki Glico created Pocky, it cannot use trade dress protection to keep competitors from copying it. The Lanham Act protects features that serve only to identify their source. It does not cover functional (that is, useful) features. That is the domain of patents, not trademarks. Ezaki Glico has not borne its burden of showing nonfunctionality. *TrafFix*, 532 U.S. at 32. There is no real dispute that Pocky's design is useful, so the trade dress is not protectable. We will thus affirm. That's the way the cookie crumbles.