**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 20-1944

_____

CHRISTOPHER BROGAN,
on behalf of himself and all
others similarly situated,
                                                         Appellant
                    v.

FRED BEANS CHEVROLET, INC.,
doing business as FRED BEANS CHEVROLET
OF DOYLESTOWN and FRED BEANS CHEVROLET

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 5:17-cv-05628)
District Judge: Honorable Chad F. Kenney

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on March 26, 2021

Before: HARDIMAN, GREENAWAY, JR., and BIBAS, *Circuit Judges*

(Filed: April 19, 2021)

_____

**OPINION**<sup>*</sup>

_____

_____
* This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding precedent.

BIBAS, *Circuit Judge*.

Christopher Brogan left a car dealership thinking he had a car loan. Then the financing fell through. The dealership soon found backup financing, though, and lowered his interest rate to make up for the hassle. Most people would move on, but Brogan sued. The District Court granted summary judgment for the dealership. We will affirm.

## I. BACKGROUND

In 2017, Brogan bought a used Subaru from Fred Beans Chevrolet. He made a $4000 down payment and traded in his old Hyundai. To cover the rest of the cost, he contracted with Fred Beans for a loan.

Fred Beans planned to assign this contract to Fifth Third Bank, which had conditionally approved the transfer. But after that conditional approval, Brogan chose to buy extra options, raising the price. He left the dealership with the Subaru, thinking that the financing was set. Then Fred Beans ran into a hitch: Fifth Third was unwilling to finance the increased loan amount. Another bank, Ally Financial, said it was willing to step in. So Fred Beans sent Brogan a second contract with the new, lower interest rate and an assignment to Ally.

Brogan had made no payments on his car under the first contract. He also did not make payments under the second contract. So Fred Beans drafted and sent a third contract with the same terms as the second one. Two weeks later, after Fred Beans reached out again, Brogan finally acknowledged the third contract and returned it to Fred Beans with an application for a loan from Ally. Ally then got Brogan's credit report and decided to take over the third contract.

2

Car loan in hand, Brogan sued Fred Beans. He claims that Fred Beans routinely misled customers to believe that their purchases were fully financed when they were not. The District Court granted summary judgment for Fred Beans on all counts and denied Brogan's class-certification motion as moot. *Brogan v. Fred Beans Motors of Doylestown, Inc.*, No. 17-5628, 2020 WL 1666464 (E.D. Pa. Apr. 3, 2020).

Brogan now appeals some of his claims as well as the denial of class certification. We review the grant of summary judgment de novo. *Ezaki Glico Kabushiki Kaisha v. Lotte Int'l Am. Corp.*, 986 F.3d 250, 255 (3d Cir. 2021).

## II. SUMMARY JUDGMENT WAS PROPER

### A. Fred Beans did not violate the Truth in Lending Act

Brogan first claims that Fred Beans violated the Truth in Lending Act. The TILA requires creditors to meaningfully disclose credit terms. *See* 15 U.S.C. §§ 1601–04. Brogan says that Fred Beans told him that it *was* assigning his first contract to Fifth Third, when in fact that assignment was only tentative. He speculates that Fred Beans intentionally misled him to lock him into the credit terms.

But Fred Beans never lied. It expected to and indeed tried to assign the first contract to Fifth Third. It reasonably thought it could do that because the bank had conditionally approved the transfer. Fred Beans did not misrepresent anything; it based its numbers and assignment on its mistaken belief.

The TILA does not penalize creditors for statements that become inaccurate based on later events. 15 U.S.C. § 1634. And Fred Beans did all that it needed to do to correct itself. When Fifth Third pulled out, Fred Beans quickly found a replacement. It promptly notified

3

Brogan of the error by sending an updated contract. § 1640(b). And it adjusted the charge by lowering his interest rate. *Id.*

Brogan also suggests that Fred Beans lied about assigning the later contracts to Ally even though that was tentative too. Again, it did not lie. And as the District Court noted, Brogan cannot ground any of his claims in a specific section or regulation of the TILA.

## B. Fred Beans did not violate the Fair Credit Reporting Act

Brogan also insists that Fred Beans violated the Fair Credit Reporting Act because banks other than Fifth Third got his credit report without his permission. But under the FCRA, Fred Beans and the banks can get and use a consumer's credit report "[i]n accordance with the written instructions of the consumer to whom it relate[d]." 15 U.S.C. § 1681b(a)(2). And Brogan's written instructions authorized other banks to get his report.

Brogan filled out a credit application, giving the dealership and banks permission to access his credit report "in connection with the proposed transaction" or "any update, renewal, refinancing, modification or extension of that transaction." JA 68. He argues that the "proposed transaction" ended the day he drove off with his Subaru and that no other bank should have pulled his credit report. But after Fifth Third withdrew, Fred Beans had to assign Brogan's sales contract to another bank. The two banks considering the assignment, including Ally, asked for his credit report. These inquiries were "in connection with" financing the Subaru sale (or an "update" or "modification" of that transaction). JA 68. So they were authorized by the credit application's terms and thus allowed by the FCRA.

4

## C. Fred Beans did not violate Pennsylvania's Unfair Trade Practices and Consumer Protection Law

Finally, Brogan objects that the $138 fee for "documentary preparation" exceeded Fred Beans's actual cost. *See Brogan*, 2020 WL 1666464, at \*13; Appellant's Br. 32. But Pennsylvania's Unfair Trade Practices and Consumer Protection Law lets dealers charge up to $138, no matter the actual cost. 63 Pa. Cons. Stat. §818.327(a)(2); 47 Pa. Bull. 812 (Feb. 4, 2017), https://perma.cc/YDX4-N93K. Though the statute limits title and registration fees to "[t]he actual cost incurred by the dealer," it puts no such limit on "documentary preparation charge[s]." *Compare* 63 Pa. Cons. Stat. §818.327(a)(1), *with* (a)(2).

\* \* \* \* \*

The law does not punish Fred Beans for a harmless blip in its financing process. We will not revive any of Brogan's claims; that moots his motion to certify a class. We will affirm.

5